Harshad M. PATEL; Bindu H. Patel; Laurence W. Karst; M. Janice Karst; and David L. Karst, Plaintiffs,

v.

HOLLEY HOUSE MOTELS, a corporation; Holley Midgley; and Sue B. Midgley, all separately and severally, Defendants/Third-Party Plaintiffs,

v.

ROBERTS BROTHERS, INC., a corporation, Counterclaim-Defendant/Third-Party Defendant.

Civ. A. No. 78–654–H.

United States District Court, S. D. Alabama, S. D.

Dec. 3, 1979.

---

Gregory B. Stein, Mobile, Ala., for plaintiffs.

Willis C. Darby, Jr., Paul D. Myrick, Mobile, Ala., for defendants/third-party plaintiffs.

Broox G. Holmes, E. B. Peebles, III, and Kirk C. Shaw, Mobile, Ala., for counterclaim-defendant/third-party defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

HAND, District Judge.

Defendants Holley Midgley, Sue B. Midgley and Holley House Motels (referred to collectively as Midgleys), have made a Motion For Partial Summary Judgment on the ground that there is no genuine issue as to any material fact and that the Midgleys are entitled to judgment as a matter of law with respect to the following issues:

1. Plaintiffs have failed to establish a claim under 42 U.S.C. § 3601 *et seq.* (Fair Housing Act of 1968), because the Palms Motel is not a "dwelling" as defined in 42 U.S.C. § 3602(b).

2. Plaintiffs' claims based upon "national origin" discrimination are not cognizable under 42 U.S.C. § 1981 and § 1982.

3. Plaintiffs have failed to demonstrate that a factor in the refusal to sell the Palms Motel was an intent to discriminate on account of race in violation of 42 U.S.C. § 1981 and § 1982.

The court has fully considered the pleadings, depositions, answers to interrogatories, the "Agreed Facts" contained in the "Stipulation of Fact" executed by counsel for Plaintiffs and counsel for Defendants, and the Briefs and oral arguments of counsel for the respective parties. Based upon the foregoing, the court enters the following Findings Of Fact And Conclusions Of Law.

## FINDINGS OF FACT

1. Plaintiff Harshad M. Patel is a native of India. He is a dark-skinned citizen of the United States and of the State of Tennessee. (Agreed Facts ¶ 1)[1]

2. Plaintiff Bindu H. Patel is a native of India. She is a dark-skinned resident of the United States and of the State of Tennessee. Harshad M. Patel and Bindu H. Patel are husband and wife. (Agreed Facts ¶ 2)

3. Plaintiff Laurence W. Karst is a native-born citizen of the United States and of the State of Tennessee. (Agreed Facts ¶ 3)

4. Plaintiff M. Janice Karst is a native-born citizen of the United States and of the State of Tennessee. Laurence W. Karst and M. Janice Karst are husband and wife. (Agreed Facts ¶ 4)

5. Plaintiff David L. Karst is a native-born citizen of the United States and of the State of California. David L. Karst is the son of Laurence W. Karst and M. Janice Karst. (Agreed Facts ¶ 5)

6. Defendant Holley House Motels is an Alabama corporation having its principal place of business in Mobile, Alabama. At all times Holley House Motels has held title to the motel doing business as the Palms Motel at 3944 Government Boulevard, Mobile, Alabama. (Agreed Facts ¶ 7)

7. Defendant C. Holley Midgley is an officer and fifty percent shareholder of Holley House Motels. (Agreed Facts ¶ 8)

8. Defendant Sue B. Midgley is an officer and fifty percent shareholder of Holley House Motels. Holley Midgley and Sue B. Midgley are husband and wife. (Agreed Facts ¶ 9)

9. Counterclaim Defendant/Third-Party Defendant Roberts Brothers, Inc. (Roberts Brothers), is an Alabama corporation having its principal place of business in Mobile, Alabama. Roberts Brothers is a licensed real estate broker corporation under the Alabama Real Estate License Law of 1951, as amended, *Code of Ala.* 1975, § 34–27–30 *et seq.* (Agreed Facts ¶ 10)

10. John Pat Flynn (Flynn) is a real estate salesman associated with Roberts Brothers. (Agreed Facts ¶ 11)

11. Richard E. Miller (Miller) is a real estate salesman associated with Roberts Brothers. (Agreed Facts ¶ 12)

12. Through Holley House Motels, Holley Midgley and Sue B. Midgley have owned and operated the Palms Motel for approximately ten years. The Palms Motel is a relatively small, independently owned and operated motel, termed by Holley Midgley as a "mom and pop" operation. Unlike a national franchise such as Holiday Inns of America, the Palms Motel has no national or local referral system to refer guests to the motel. Many of the guests of the Palms Motel are traveling businessmen who are repeat guests. Holley Midgley is the manager of the Palms Motel; Sue B. Midg-

---

1. "Agreed Facts" refers to the Agreed Facts to which counsel for Plaintiffs and Defendants stipulated in a "Stipulation of Fact" filed with the court. Counsel specifically admitted the "truth" of all Agreed Facts. The following depositions have been filed with the court: Plaintiffs Harshad M. Patel, Bindu H. Patel, Laurence W. Karst, M. Janice Karst; Defendants Holley Midgley and Sue B. Midgley; the Midgleys' tax attorney, Robert P. Denniston; and, sales associates of Roberts Brothers, Inc., John Pat Flynn and Richard E. Miller. Deposition testimony is cited by the deponent's name and the page.

ley serves as a receptionist at the front desk. (Holley Midgley at 5–6, 18–19; Sue B. Midgley at 23; Denniston at 35–37)

13. Holley Midgley and Sue B. Midgley do not reside at the Palms Motel and there is no evidence that the motel was ever intended or used as a family residence. Plaintiffs testified that they sought to purchase the Palms Motel as a commercial investment and that no Plaintiff intended to reside in the Palms Motel after the purchase. (Sue B. Midgley at 5; Laurence Karst at 43–44; Harshad Patel at 9–10; Richard Miller at 29–30; Bindu Patel at 11, 53; David Karst at 16; Janice Karst at 8)

14. Prior to the transaction involved in this action, traveling businessmen, who regularly stayed at the Palms Motel, had informed Holley Midgley that they had previously stayed in motels in other cities which were purchased and managed by persons of Indian origin, that such motels had been poorly managed, and that they had ceased staying at such motels for that reason. (Holley Midgley at 19–22)[2]

15. Based upon such information, the Midgleys formed the belief that persons of foreign origin were unfamiliar with the customs and mores of this part of the country and that such unfamiliarity, combined with a language barrier, would prevent persons of foreign origin from properly managing a small non-franchised motel in the Mobile area. (Agreed Facts ¶ 22; Holley Midgley at 18–23, 85, 126–127; Sue B. Midgley at 12, 21–22; Laurence Karst at 43; Pat Flynn at 86–87)

16. Prior to the time the Midgleys listed the Palms Motel for sale, Holley Midgley and Sue B. Midgley had been contacted by persons of Indian origin regarding a possible sale of the Palms Motel. The Midgleys had refused to respond to a written offer from a person of Indian origin named Amrut Patel, both because the offer was too low and because the offeror was of foreign origin. (Agreed Facts ¶ 17 and ¶ 18; Sue B.

Midgley at 36; Holley Midgley at 33–34, 40, 83–84)

17. In early 1978, the Midgleys decided to list the Palms Motel for sale because Holley Midgley and Sue B. Midgley intended to retire from the motel business. The Midgleys believed that they could not afford to sell the Palms Motel for cash because of the adverse federal income tax consequences of a cash sale. Furthermore, the Midgleys desired a steady flow of retirement income. Consequently, the Midgleys determined to list the Palms Motel for sale on an installment contract basis with the Midgleys financing the purchasers over an extended period of time. The Midgleys believed that for purchasers to be successful and make the installment payments over an extended period of time, participation of the purchaser in the daily management of the Palms Motel would be required. The Midgleys did not believe the business could be successful with absentee management. (Agreed Facts ¶ 14; Holley Midgley at 70, 78, 103–104, 126–129; Sue B. Midgley at 15, 31–33; Denniston at 28–31, 35–36, 41–46)

18. Pursuant to a "Sales Authority" dated July 13, 1978, Holley Midgley and Sue B. Midgley retained Roberts Brothers to procure a purchaser for the Palms Motel. The Sales Authority provided for an installment sale of the Palms Motel. (Agreed Facts ¶ 13; Harshad Patel Exh. 1)

19. Prior to September 28, 1978 (the date of the "Offer of Purchase" from Plaintiffs Laurence Karst, Janice Karst and David Karst), Holley Midgley had refused to deal with one or more prospective purchasers of the Palms Motel who were of Indian origin because Holley Midgley stated he did not believe that such persons could properly manage the Palms Motel. (Agreed Facts ¶ 18)

20. Sometime prior to September 28, 1978, Flynn advised Holley Midgley that a

---

**2.** The testimony of Holley Midgley regarding information obtained from guests at the Palms Motel is not cited to establish the truth of the matters asserted therein. The testimony is admissible on the issue of Holley Midgley's state of mind (belief), motivation or intent. Rule 803(3), *Federal Rules of Evidence.*

Mr. Patel, who had been referred by Herman Maisel Real Estate Agency, had expressed an interest in making an offer to purchase the Palms Motel (Other "Patels" referred to herein are unrelated to Harshad M. Patel and Bindu H. Patel, who are Plaintiffs in this action). Holley Midgley asked Pat Flynn if Mr. Patel was of Indian origin, and when Flynn responded in the affirmative Holley Midgley stated to Pat Flynn that Holley Midgley did not want to sell to Indians or foreigners. Holley Midgley subsequently informed Pat Flynn that the reason he did not wish to sell to Indians or foreigners was because he did not believe they were acquainted with the customs of the people in this part of the country and Holley Midgley did not believe they could do an adequate job of managing the Palms Motel. Flynn advised Mr. Patel and the representative of Herman Maisel Real Estate Agency that Holley Midgley would not sell to persons of Indian origin. No written offer was made on the Palms Motel. (Agreed Facts ¶ 14)

21. Tony Brown, a representative of Herman Maisel Real Estate Agency, subsequently contacted Flynn regarding three gentlemen named "Patel" who were interested in purchasing the Palms Motel. Although Flynn informed Tony Brown that Holley Midgley had stated he would not sell to persons of Indian origin, Brown subsequently contacted Flynn and stated that the three gentlemen named Patel were coming to Mobile to review the information on the Palms Motel. The three Patels met with Flynn and Tony Brown at the offices of Roberts Brothers. Flynn advised the three that Holley Midgley did not wish to sell to foreigners. The three Patels still indicated an interest in making an offer on the Palms Motel and expressed a willingness to pay the full purchase price of $700,000.00. Flynn telephoned Holley Midgley regarding the offer. The offer was not accepted by Holley Midgley and no written offer was extended. (Agreed Facts ¶ 15)

22. Flynn was later contacted by Catherine Dill of Praytor Realty with a prospective purchaser. Flynn was informed that prospective purchaser was of Indian origin.

Flynn advised Catherine Dill of the potential problem involved as Holley Midgley had stated he would not sell to persons of Indian origin. Flynn contacted Holley Midgley and advised him that Flynn had a prospect of Indian origin. Holley Midgley stated he did not want to sell the motel to a person of Indian origin. (Agreed Facts ¶ 16)

23. There is no evidence that Holley Midgley or Sue B. Midgley ever inquired as to the race or color of any of the prospective Indian purchasers or stated a racial preference when Flynn presented such prospective purchasers. Indeed, in deposition, Flynn specifically stated that Holley Midgley *never* indicated that he did not want to sell to black people, (Flynn at 164), and the uncontroverted testimony of Holley Midgley was that he would have sold the Palms Motel to a qualified black purchaser. (Midgley at 109) Rather, the Midgleys stated that they did not wish to sell to Indians or foreigners. Extensive evidence in the record establishes the Midgleys' economic motivation for refusing to deal with foreigners: the Midgleys did not believe that "foreigners" were acquainted with the customs and mores of the people of this part of the country; they believed that such persons had a language barrier; and, the Midgleys did not believe that foreigners could do an adequate job of managing the Palms Motel. (Agreed Facts ¶ 14 and ¶ 22; Holley Midgley at 18–21, 33, 85, 126–127; Sue B. Midgley at 12, 21–22; Denniston at 29–31, 43; Flynn at 76–77)

24. On September 28, 1978, a written "Offer of Purchase" for the Palms Motel was made bearing only the names of Plaintiffs Laurence W. Karst, M. Janice Karst and David L. Karst, and signed by Richard E. Miller. (Agreed Facts ¶ 19)

25. On September 28, 1978, the purchasers of the Palms Motel were Laurence W. Karst, M. Janice Karst, David L. Karst, Harshad M. Patel, Bindu H. Patel and Kanu Patel and his wife. The Karsts were to contribute $20,000 toward the down payment, Harshad and Bindu Patel were to contribute $20,000, and Kanu Patel and

wife were to contribute $20,000. The identities of Harshad and Bindu Patel and Kanu Patel were intentionally not disclosed to Holley Midgley or Sue B. Midgley, and the Midgleys were unaware of the Patels' participation. (Laurence Karst at 38; David Karst at 30–31; Harshad Patel at 43–44; Bindu Patel at 54)

26. The Midgleys rejected the offer contained in the Offer of Purchase, but on September 29, 1978, made the counteroffer appearing on the second page of the Offer of Purchase. (Agreed Facts ¶ 20)

27. On October 2, 1978, Laurence Karst, Janice Karst and David Karst, Holley Midgley and Sue B. Midgley, Flynn and Miller, met for the first time at the residence of the Midgleys. During this meeting, Holley Midgley stated he wanted to retire and wanted to make sure that he would get a purchaser who would ensure that he would be able to retire. Holley Midgley related a supposed incident where persons of Indian origin had purchased a motel but were unable to properly manage the business, as Holley Midgley asserted, because of a lack of knowledge and understanding of the customs and mores in this part of the country. Holley Midgley stated the former owner had to take the motel back. Holley Midgley stated that he did not want that to happen to him. (Agreed Facts ¶ 22) Richard Miller testified that he vividly recalled Holley Midgley using the word "foreign" rather than "Indian" origin during the October 2, 1978 meeting. (Miller at 54)

28. Later on October 2, 1978, Laurence Karst, Janice Karst and David Karst responded to the Midgleys' counteroffer. (Agreed Facts ¶ 23)

29. Subsequent to October 2, 1978, the Midgleys contacted and retained attorney Robert P. Denniston for tax advice with regard to a sale of the Palms Motel. (Denniston at 5) On October 11, 1978, Robert P. Denniston met with Plaintiffs' counsel, Mitchell Lattof. Based upon income tax considerations, Denniston discussed conveying the Palms Motel through a method other than the actual sale of the property. (Agreed Facts ¶ 24)

30. Plaintiffs subsequently accepted the proposal of Holley Midgley and Sue B. Midgley to accomplish a sale by purchase of the stock of Holley House Motels by a corporation to be formed by the purchasers. "LHK Corporation" was organized to buy the stock of Holley House Motels. The terms of the Stock Purchase Agreement were to be negotiated by Messrs. Denniston and Lattof, representing the respective parties. (Agreed Facts ¶ 25)

31. Denniston met with Holley Midgley and Sue B. Midgley on November 11, 1978, to review the draft of the Stock Purchase Agreement. During this meeting, Denniston showed the Midgleys the name of Bindu H. Patel, which appeared in the Stock Purchase Agreement. Denniston related to the Midgleys having met Lattof, Laurence Karst, Janice Karst and two persons who appeared to be of Indian origin on the street the day before. (Agreed Facts ¶ 26)

32. Upon receipt of the proposed Stock Purchase Agreement on November 11, 1978, the Midgleys for the first time discovered that persons other than Laurence Karst, Janice Karst and David Karst were apparently participating in the transaction. (Holley Midgley at 31; Sue B. Midgley at 8, 26; Denniston at 26)

33. During the meeting on November 11, 1978, Holley Midgley and Sue B. Midgley recognized the name "Patel" as an Indian name, as the Midgleys had previously been contacted by a person of Indian origin named Amrut Patel; Holley Midgley made statements to Denniston that he (Holley Midgley) did not want to sell the Palms Motel to Indians or foreigners and that he (Holley Midgley) did not think that persons of Indian origin would be familiar with the customs and practices of the motel business in the Mobile area, and therefore could not make a success of the Palms Motel business. Holley Midgley further stated that the Midgleys had received a previous offer from an Indian named Patel and that they had refused to deal with the offeror because the Midgleys did not think a person of Indian origin could properly manage the Palms Motel and because the offer was too low.

(Agreed Facts ¶ 27; Denniston at 30, 35–37) During the conversation with Denniston on November 11, 1978, Holley Midgley informed Denniston that Amrut Patel had previously submitted an offer on the Palms Motel (Finding 15, *supra*) and was apparently attempting to purchase the Palms Motel using the Karsts as a front. Holley Midgley stated to Denniston that he did not care who the purchasers were, he had been deceived and he would not continue in negotiations. (Holley Midgley at 33, 35, 110; Denniston at 35, 46–47, 50)

34. Holley Midgley and Sue B. Midgley refused to execute the Stock Purchase Agreement and instructed Denniston to advise Lattof that the Midgleys would not sell the Palms Motel. (Agreed Facts ¶ 27) Holley Midgley refused to communicate directly with Harshad and Bindu Patel to determine the extent of the participation of the Patels. (Holley Midgley at 44; Denniston at 46)

35. After meeting the Midgleys, Denniston telephoned Lattof and advised him that Holley Midgley had refused to sign the Stock Purchase Agreement. During the conversation Denniston stated in substance: that he (Denniston) had informed the Midgleys that he had met Mitchell Lattof, Laurence Karst, Janice Karst and two other persons who appeared to be of Indian origin on the street the day before; that Holley Midgley had discovered that a Patel or Patels, were involved in the transaction when he saw the name Bindu H. Patel on the agreement, and that Holley Midgley objected to the Patels' involvement; that Holley Midgley had stated he did not believe that the Patels would be the type of management with whom his customers were accustomed to dealing and that this would be detrimental to the Patels' business. (Agreed Facts ¶ 28; Denniston at 41–44; Complaint ¶ 21; Answer ¶ 21)

36. Later on November 11, 1978, Laurence Karst telephoned Holley Midgley from the apartment of Harshad and Bindu Patel. During the conversation, Holley Midgley stated that Laurence Karst knew that Holley Midgley did not want to deal with any Indians, so the deal was off; that Holley Midgley had a letter in his files from a Patel to buy the Palms Motel, that he refused to do business with them then, and he was not going to do business with them now; and that he wasn't selling the Palms Motel to any Indians and that the deal was off. (Agreed Facts ¶ 29)

37. Prior to the Midgleys' refusal to sell the Palms Motel, the Midgleys never met or communicated with Harshad or Bindu Patel. (Harshad Patel at 16; Bindu Patel at 10; Sue B. Midgley at 8, 26; Holley Midgley at 33, 110) Although Holley Midgley testified that he generally believed persons of Indian origin to be dark-skinned, he testified that in his business dealings at the Palms Motel he had met persons of Indian origin who were white and persons of Indian origin who were dark-skinned. Sue B. Midgley testified that she had met approximately the same number of persons of Indian origin who were white as those who were dark-skinned. (Holley Midgley at 50–51; Sue B. Midgley at 13, 23–24)

38. Holley Midgley testified that he would sell the Palms Motel to a black person who was familiar with the motel business and possessed the requisite financial ability to make the purchase. (Holley Midgley at 109) The record is replete with references to the Midgleys' refusal to sell the Palms Motel to "foreigners" and the reasons for that refusal. Holley Midgley defined "foreigner" as a person not born in the United States. (Holley Midgley at 49, 85) Sue Midgley defined "foreigner" as a person not born in the United States who "[does] not speak English very well and [is] not accustomed to our part of the country." (Sue Midgley at 13–14) The record is also replete with references to the Midgleys' refusal to sell to persons of "Indian origin." However, the only "foreigners" who sought to purchase the Palms Motel were of Indian origin; it is uncontroverted that the Midgleys did not want to sell the Palms Motel to any foreigners and that the refusal was economically motivated. (*See* Findings of Fact ¶¶ 12, 14, 15, 17, 19, 20 and 23 *supra*).

39. Plaintiffs testified to two racial statements with regard to the transaction. (Laurence Karst at 14–15, Vol. II at 3–4; Harshad Patel at 21–22, 27–28) Each statement was attributed to Pat Flynn. Although Flynn did not recall such statements (Flynn referred exclusively to "Indians" or "foreigners") (Flynn at 55–56, 68–73), even if true (for the purposes of the Motion For Partial Summary Judgment the court accepts the statements as true), the statements referred exclusively to Flynn's belief. The statements were not probative of the Midgleys' motivation. Indeed Flynn specifically testified that the Midgleys did not want to sell to foreigners because Holley Midgley did not believe foreigners knew the customs of this part of the country (Flynn at 76–77), and that Holley Midgley never indicated he did not want to sell to a black person. (Flynn at 164) Absent any facts upon which Flynn's belief was based, the statements are not probative of the Midgleys' motivation.

40. The Midgleys' refusal to sell to persons of foreign origin was motivated by the economic consideration that the Midgleys did not believe that persons of foreign origin were familiar with the customs and mores in this part of the country and would therefore be unable to properly manage the Palms Motel. (See Denniston at 44; Flynn at 86) The Midgleys at all times intended to finance the purchasers and believed that the purchasers should be involved in the management of the Palms Motel. The Midgleys' refusal to deal with the Plaintiffs was additionally motivated by Plaintiffs' failure to disclose the Patels involvement until November 11, 1978. (Denniston at 35–37, 50; Holley Midgley at 91–94) There is no evidence in the record that skin color played any part in the Midgleys' refusal to sell the Palms Motel.

## CONCLUSIONS OF LAW

1. Plaintiffs assert a claim under the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq., based upon the allegation that the Defendants refused to sell the Palms Motel to the Plaintiffs because of Plaintiffs' Indian origin or because of Plaintiffs' association with persons of Indian origin. Title 42, U.S.C. § 3604 makes it unlawful to discriminate in the sale of a "dwelling" to any person because of race, color, religion, sex, or national origin. The *Fair Housing Act* is confined exclusively to discrimination in the negotiation, sale or rental of a "dwelling" as defined in 42 U.S.C. § 3602(b):

> "Dwelling" means any building . . . which is occupied as, or designed or intended for occupancy as, a residence by one or more families . . .

The Palms Motel is a commercial "public accommodation" owned and operated by Holley House Motels. The Palms Motel is not occupied, designed or intended for occupancy as a residence, and therefore is not a "dwelling" to which the *Fair Housing Act* is applicable.

It is undisputed that Plaintiffs at all times sought to purchase the Palms Motel as a commercial venture, and that no Plaintiff intended to reside in the Palms Motel. *United State v. Mintzes*, 304 F.Supp. 1305, 1309–1310 (D.C.Md.1969).

In *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 548–549 (W.D.Va. 1975), the court defined a "dwelling" as a "temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." It is clear that the Palms Motel is an establishment which provides lodging to "transient" guests. The Palms Motel is a "public accommodation" as distinguished from a "dwelling," *see* Title II, Civil Rights Act of 1964 (Public Accommodations), 42 U.S.C. § 2000a(b)(1), and Plaintiffs, therefore have no claim under the *Fair Housing Act.*

2. Plaintiffs assert an alternative theory of recovery based upon the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1982. Plaintiffs' claim is based upon the allegation that defendants "failed and refused to deal with them and to sell or convey the Palms Motel to them because they are dark-skinned and of Indian origin or because they are in association with per-

sons who are dark-skinned and of Indian origin." Allegations of discrimination based *solely* upon national origin are not cognizable under 42 U.S.C. § 1981 and § 1982. In *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189, 1192–1193 (1968), the United States Supreme Court stated:

> . . . In sharp contrast to the Fair Housing Title (Title VIII) of the Civil Rights Act of 1968 . . . the statute [§ 1982] deals only with racial discrimination *and does not address itself to discrimination on grounds of religion or national origin.* (Emphasis supplied)

Although *Jones v. Alfred H. Mayer Co.,* was concerned with 42 U.S.C. § 1982, the limitation of § 1982 to racial discrimination applies equally to 42 U.S.C. § 1981. *See Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *State of Georgia v. Rachel,* 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966).

3. The court is fully aware that the Fifth Circuit has extended the coverage of § 1981 to include discrimination on account of citizenship. *Guerra v. Manchester,* 498 F.2d 641 (5th Cir. 1974). Subsequent Supreme Court decisions cast doubt as to the continued vitality of the *Guerra* decision, at least to the extent it purports to give differing scope to § 1981 and § 1982. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See also Campbell v. Gadsden County Dist. School Bd.,* 534 F.2d 650, 654 n. 9 (5th Cir. 1976); *Hiduchenko v. Minnesota Medical Center,* 19 F.E.P. Cases 462 (D.Minn.1979). Suffice "it" to say, however, the *Guerra* decision did not address the application of § 1981 to national origin discrimination. The United States Supreme Court has consistently focused upon the racial character of the rights protected by 42 U.S.C. § 1981 and § 1982, and the legislative history and constitutional basis (thirteenth amendment) of those provisions support such a construction. *See McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–460, 95 S.Ct. 1716, 1719–1720, 44 L.Ed.2d 295 (1975).

4. An exhaustive review of cases applying 42 U.S.C. § 1981 and § 1982 overwhelmingly supports the proposition that those provisions do not support a claim based *solely* upon national origin discrimination. *Williams v. Patton,* 410 F.Supp. 1 (E.D.Pa. 1976) (42 U.S.C. § 1981) (Limited to racial discrimination.); *Baca v. Butz,* 394 F.Supp. 888, 889–890 (D.C.N.Mex.1975); *Thomas v. Firestone Tire and Rubber Co.,* 392 F.Supp. 373 (N.D.Tex.1975); *Black v. Cook,* 444 F.Supp. 61 (W.D.Okl.1977); *Lee v. Minnock,* 417 F.Supp. 436 (W.D.Pa.1976); *Haythe v. Decker Realty Co.,* 468 F.2d 336, 338 (7th Cir. 1972); *Arnold v. Tiffany,* 359 F.Supp. 1034, 1035 (C.D.Cal.1973), *aff'd.* 487 F.2d 216 (9th Cir. 1973), *cert. denied* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974) ("Plaintiffs' counsel acknowledged, that cases have shown that §§ 1981 and 1982 are limited to instances of racial discrimination."); *Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *Marshall v. Plumbers and Steamfitters Local Union 60,* 343 F.Supp. 70, 72 (E.D.La.1972) ("Indeed, it appears that both § 1981 and § 1982 are sufficiently narrow so that they do not even cover discrimination based on religion, sex or national origin."); *Schetter v. Heim,* 300 F.Supp. 1070, 1073 (E.D.Wis.1969) ("These sections [§§ 1981 and 1982] are clearly limited to racial discrimination—they do not pertain to discrimination on grounds of religion or national origin."); *Agnew v. Compton,* 239 F.2d 226 (9th Cir. 1956), *cert. denied* 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); *Budinsky v. Corning Glass Works,* 425 F.Supp. 786, 787 (W.D.Pa.1977) ("Discrimination grounded on national origin—or, indeed, on anything but 'race' . . .—is not now cognizable under § 1981."); *Jones v. United Gas Improvement Corp.,* 12 F.E.P. Cases 344, 68 F.R.D. 1 (E.D.Pa.1975); *Kurylas v. Department of Agriculture,* 373 F.Supp. 1072, 1076 (D.C.D.C.1974) ("Our research has not un-

covered a single case which has entertained a § 1981 suit that did not allege some form of *racial* discrimination. The court concludes that the plaintiff's allegation of discrimination due to his national origin is insufficient to sustain a cause of action under § 1981. . . ."); *Gradillas v. Hughes Aircraft Company*, 407 F.Supp. 865, 867 (D.Ariz.1975) ("It has been uniformly held that matters of racial discrimination are the only matters which are encompassed within 42 United States Code Section 1981."); *Mouriz v. Avondale Shipyards, Inc.*, 428 F.Supp. 1025, 1027 (E.D.La.1977) ("Thus claims of private discrimination based on religion or national ancestry are not afforded judicial relief by Section 1981."); *Plummer v. Chicago Journeyman Plumbers Local 130*, 452 F.Supp. 1127 (D.C.Ill.1978); *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (D.C.Pa.1978); *Martinez v. Hazelton Research Animals, Inc.*, 430 F.Supp. 186 (D.C.Md.1977); *Government Employees v. Rumsfeld*, 413 F.Supp. 1224 (D.C.D.C.1976), aff'd, 556 F.2d 76 (D.C.Cir.1977).

■ 5. This court does not hold that a dark-skinned person of Indian origin could not establish a claim under 42 U.S.C. § 1981 or § 1982. If such a person established that race or color was a factor in the discrimination, 42 U.S.C. § 1981 and § 1982 would support a claim. *See Gomez v. Pima County*, 426 F.Supp. 816 (D.Ariz.1976); *Sethy v. Alameda Co. Water District*, 545 F.2d 1157 (9th Cir. 1976). However, a refusal to sell based *solely* upon the country of an individual's ancestry, or upon the cultural and linguistic characteristics common to an ethnic or national group, will not support a claim under those provisions.

6. Although Plaintiffs' Complaint contains the conclusory allegation that the refusal to sell the Palms Motel was on account of Plaintiffs' "dark-skin", plaintiffs have failed to adduce facts to support that a motivating factor in the refusal to sell the Palms Motel was an intent to discriminate on account of race or color in violation of 42 U.S.C. § 1981 and § 1982. Plaintiffs' Complaint contains extensive factual allegations regarding national origin, which allegations are generally admitted by Defendants' Answer. The Complaint contains no factual allegations supporting the conclusion that race was a factor in the refusal to sell. Furthermore, extensive discovery conducted by the parties in this case has failed to disclose any evidence of racial motivation in the Defendants' refusal to sell the Palms Motel. *See* Findings of Fact, *supra*. Extensive evidence in the record supports the findings that the Midgleys refused to sell the Palms Motel to "foreigners" because the Midgleys did not believe that such persons had the requisite knowledge and understanding of the "customs and mores of this part of the country" required to successfully manage the Palms Motel.

■ 7. Plaintiffs failed to cite the court to any record evidence to raise a genuine issue of fact regarding the Midgleys' motivation, even after the court granted Plaintiffs an additional ten days after the hearing on Motion For Partial Summary Judgment to do so. The Local Rules of this court require the party opposing summary judgment to point out such disputed facts.[3] Rather than citing facts to raise a genuine issue of fact regarding the Midgleys' motivation, counsel for Plaintiffs advances the proposition that East Indians constitute a separate racial group, and that national origin and race or color are indistinguishable (at least as regards East Indians). Counsel asserts that Plaintiffs should not be required to adduce *any* evidence of a racial or color discriminatory motivation. The court cannot agree. This court has previously held that the Supreme Court's decision in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), requires a showing of racially (or color) discriminatory intent in order to support a claim under 42 U.S.C. § 1981. *Yates v. Mobile County Personnel Board*, Civil Action 77–492–H

---

3. Local Rule 8, *Local Rules of Southern District of Alabama*, states in pertinent part: ". . . the party . . . in opposition [to motion for summary judgment] . . . if it is contended that there are material factual disputes, shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the case."

(Order entered October 20, 1978). Likewise, the Fifth Circuit has held that a plaintiff must demonstrate "purposeful discrimination" to support a claim under § 1981. *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir. 1978); *William v. DeKalb County,* 582 F.2d 2 (5th Cir. 1978). The uncontroverted evidence establishes that the Midgleys refused to sell the Palms Motel to Plaintiffs because Harshad and Bindu Patel were "foreign" and the Midgleys believed that foreigners were unfamiliar with the customs and mores of this part of the country, had a language barrier, and could therefore not successfully manage the Palms Motel.

8. Race or color and national origin are not indistinguishable. "National origin" is not defined in Title VII of the *Civil Rights Act of 1964,* or in other federal statutes relating to civil rights. However, national origin has come to mean the country of an individual's ancestry, rather than his race or color. BNA, *Labor Relations Reporter— Fair Employment Practices Manual,* Vol. 8, ¶ 421:751. More specifically, national origin refers to the cultural and linguistic characteristics common to an ethnic or national group. Larsen, *Employment Discrimination,* Vol. 4, § 93.00; Equal Employment Opportunity Commission, "Suggested National Origin Guidelines," July 24, 1968 (unpublished). Plaintiffs have failed to offer any evidence that the refusal to sell the Palms Motel was based in any part upon Plaintiffs' race or color. The mere fact that Plaintiffs Harshad Patel and Bindu H. Patel are "dark-skinned" is unavailing, if race or skin color was not a factor in the refusal to deal with the Plaintiffs.

9. Plaintiffs may not rely upon the unsupported conclusory allegations in their Complaint when confronted with a properly supported motion for summary judgment. Plaintiffs must demonstrate by admissible evidence in the record that there is a genuine issue of material fact to be resolved at trial. *Bruce Construction Corporation v. United States,* 242 F.2d 873, 875 (5th Cir.

1957); *Southern Rambler Sales, Inc. v. American Motors Corp.,* 375 F.2d 932, 937 (5th Cir. 1967), *cert. denied* 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92 (1967).

10. This court fully recognizes the difficulty in adducing evidence of motive or intent and has viewed the evidence in a light most favorable to the Plaintiffs. *See Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977), ("determining whether invidious discriminatory [racial] purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."). This court finds no such evidence and Plaintiffs cite no such evidence. The suggestion of Plaintiffs' counsel that *no* such evidence should be required in this case, apparently admits that all such evidence is absent. This court is cognizant that even where the case is set for non-jury trial, as this case is, the movant (Defendant Midgleys) must demonstrate that there is no genuine issue of material fact. The court concludes that this burden has been met.

Based upon the foregoing Findings of Fact and Conclusions of Law, the court concludes that as to Plaintiffs' claims under 42 U.S.C. § 3601 *et seq.,* § 1981 and § 1982, there is no genuine issue of material fact and that Defendants are entitled to a judgment as a matter of law on such claims.

Defendants' Motion For Partial Summary Judgment is therefore due to be, and same hereby is, GRANTED.