

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2006

# Lakeside Resort Entr v. Bd Supv Palmyra Twp

Precedential or Non-Precedential: Precedential

Docket No. 05-1163

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lakeside Resort Entr v. Bd Supv Palmyra Twp" (2006). *2006 Decisions*. Paper 654.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/654

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1163

LAKESIDE RESORT ENTERPRISES, LP;
LAKESIDE WATERS EDGE, INC.;
PAUPACK HOLDING, INC.;
LAKESIDE WATER SYSTEM, INC.;
EDWIN, INC.; MARK GAWRON;
MARCELLA GAWRON;
GERALD GAWRON; JEROME GAWRON,

Appellants

v.

BOARD OF SUPERVISORS OF PALMYRA TOWNSHIP;
PALMYRA TOWNSHIP

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 01-cv-01238)
District Judge: Honorable Richard Caputo

Argued March 7, 2006

Before: AMBRO and STAPLETON, <u>Circuit Judges,</u>
STAGG,[*] <u>District Judge</u>

(Opinion filed:  July 20, 2006 )

Jeremy A. Haugh, Esquire
Hamlin Corners Professional Building
P.O. Box 735
Hamlin, PA   18427-0735

Ronald V. Santora, Esquire (Argued)
Bresset & Santora
1188 Wyoming Avenue
Forty Fort, PA  18704

        Counsel for Appellants

Patrick J. Murphy, Esquire (Argued)
Murphy, Piazza & Genello
Scranton Life Building, Suite 300
538 Spruce Street
P.O. Box 909
Scranton, PA   18501

        Counsel for Appellees

_____

OPINION OF THE COURT

_____

_____

[*]Honorable Tom Stagg, Senior District Judge for the
Western District of Louisiana, sitting by designation.

2

AMBRO, Circuit Judge

We consider whether a proposed drug- and alcohol-treatment facility, under the facts of this case, qualifies as a dwelling under the Fair Housing Act. Due to funding restrictions, residents of the facility would stay there for slightly more than two weeks on average. But the facility is intended for longer stays, and many stay longer. Moreover, while they are there, the residents would treat the facility like a home. We therefore deem it a dwelling under the Act.

## I. Factual Background and Procedural History

In late summer 2000, Lakeside[1] was negotiating to sell a resort property to Greenway, Inc., which intended to use the property as a drug- and alcohol-treatment center. That September, they set a price of $1.75 million. The Lakeside property—zoned as Community Commercial—sits on Lake Wallenpaupack in Palmyra Township and includes a hotel-restaurant complex.

In October 2000, Palmyra's Board of Supervisors started working on (and in January 2001 passed) a zoning ordinance amendment that prohibited, among other things, drug- and

---

[1] Plaintiffs/appellants are members of the Gawron family and the various entities they own or control, including Lakeside Resort Enterprises, LP. In this opinion, we use the name Lakeside to refer to all of them.

alcohol-treatment centers in the Community Commercial district. The Board then denied Lakeside's application for a conditional use of the property as a drug- and alcohol-treatment center. As a result, the sale to Greenway fell through.

After losing the sale, Lakeside sued the Board in the Middle District of Pennsylvania, challenging the validity of the ordinance under, *inter alia*, the Fair Housing Amendments Act (FHAA) of 1988,[2] 42 U.S.C. §§ 3601 *et seq.* Lakeside and the Board both filed summary judgment motions, and in June 2003 the District Court denied Lakeside's motion and all but a part of the Board's motion. The suit went to trial, but a mistrial was declared after Lakeside had presented most of its testimony. A new trial began in December 2004. At the close of Lakeside's case, the Board moved for a judgment as a matter of law, but the Court denied it as to the FHAA claim. The Court denied another motion for judgment as a matter of law (renewed by the Board after its first witness), leaving two viable claims,[3] including the FHAA claim.

The District Court decided *sua sponte* to reconsider its

---

[2] Title VIII of the Civil Rights Act of 1968 is called the Fair Housing Act. We refer to Lakeside's claim as "the FHAA claim" because it arises under a provision added to the Fair Housing Act by the FHAA.

[3] The other claim was under the Americans with Disabilities Act (ADA).

denial of the Board's motion for judgment as a matter of law on the FHAA claim, reversed its decision on that motion, and entered judgment for the Board under Federal Rule of Civil Procedure 50(a). Lakeside then moved for reconsideration of this decision. Before the District Court denied the reconsideration motion (which it did in March 2005), Lakeside filed a notice of appeal to our Court in January 2005.[4]

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291.

Because the District Court entered a judgment as a matter of law under Rule 50(a), our review is plenary. *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 400 (3d Cir. 1999). We "must view the evidence . . . in a light most favorable to the non-moving party and must give the non-moving party the benefit of all reasonable inferences that can be drawn in its

---

[4] The notice of appeal did not become effective until after the District Court ruled on the motion for reconsideration. Fed. R. App. P. 4(a)(4)(B)(I).

The jury had returned a verdict for the Board in December 2004 on the ADA claim; Lakeside's notice of appeal also covered this verdict. But this issue was not briefed to us, so it is waived. *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006).

5

favor." *Id.* We also "exercise plenary review over the question of whether the district court applied an incorrect legal standard." *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1101 (3d Cir. 1996).

### III. Discussion

### A.

The Fair Housing Act proscribes discrimination in the sale of a dwelling due to a handicap[5] of those who are to reside in the dwelling after the sale. 42 U.S.C. § 3604(f)(1).[6] A

---

[5] We note that at least two other courts have held that recovering alcoholics and drug addicts are handicapped, so long as they are not currently using illegal drugs. *See United States v. S. Mgmt. Corp.*, 955 F.2d 914, 920–23 (4th Cir. 1992); *Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123, 125 (D. Conn. 2001); *see also Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 48 (2d Cir. 1997) (same, under the ADA and the Rehabilitation Act), *abrogation on other grounds noted by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001).

> [6] This provision makes it unlawful
> [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>> (A) that buyer or renter[;]
>> (B) a person residing in or

6

dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." *Id.* § 3602(b).

We must decide whether the proposed drug- and alcohol-treatment facility is a dwelling under the Fair Housing Act. In making this decision, we are to give a "generous construction" to the statute's "broad and inclusive" language. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972). Our Court has dealt with similar issues twice before. In *United States v. Columbus Country Club*, we decided that a summer bungalow was a dwelling. 915 F.2d 877, 881 (3d Cir. 1990). Then, in *Hovsons, Inc. v. Township of Brick*, we held that a nursing home was a dwelling. 89 F.3d 1096, 1102 (3d Cir. 1996).

As "family" in the statute "includes a single individual," 42 U.S.C. § 3602(c), *Columbus Country Club* held that "residence" is the key word in the dwelling definition, 915 F.2d at 881. Because "residence" is not defined in the statute, we

---

intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that buyer or renter.
42 U.S.C. § 3604(f)(1).

7

looked instead to the dictionary definition applied by another court 15 years earlier. *Id.* (citing *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 549 (W.D. Va. 1975)). Under that definition, a residence is "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Id.* (internal quotation marks omitted).

Moving to the "dwelling" analysis, we then held that "the central inquiry [was] whether the [country club's] members intend to remain in the bungalows for any significant period of time and whether they view their bungalows as a place to return to." *Id.* Accordingly, we concluded that the Act "'would presumably cover . . . facilities whose occupants remain for more than a brief period of time and who view their rooms as a residence "to return to."'" *Id.* (quoting R. Schwemm, *Housing Discrimination Law* 53 (1983)) (omission in original). We also noted that there was "no indication in the statutory language that Congress intended to limit coverage of the Act to year-round places of abode and exempt seasonal dwellings." *Id.* Because the country club's members returned nearly every summer to the bungalows and spent up to five months in them, we held that the bungalows were residences. *Id.*

We also wrote approvingly of three cases from other courts, cases holding that a motel was not a dwelling, *Patel v. Holley House Motels*, 483 F. Supp. 374, 381 (S.D. Ala. 1979), that a children's home with a four-year average stay was a

8

dwelling, *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 549 (W.D. Va. 1975), and that a hospice for terminally ill AIDS patients was a dwelling, *Baxter v. City of Belleville*, 720 F. Supp. 720, 731 (S.D. Ill. 1989). *See Columbus Country Club*, 915 F.2d at 881.

In our 1996 *Hovsons* case, we had to decide whether a nursing home was a dwelling. After reviewing *Columbus Country Club*'s analysis, we stated simply: "To the handicapped elderly persons who would reside there, [the facility] would be their home, very often for the rest of their lives. We therefore hold that the proposed nursing home is a 'dwelling' within the meaning of § 3602(b)." *Hovsons*, 89 F.3d at 1102.

The District Court, in its summary judgment opinion, decided that the record was not clear on how long the residents were going to stay at the Lakeside treatment facility, so it held that there was a genuine issue of material fact and denied summary judgment on the FHAA claim. But in its Rule 50(a) judgment as a matter of law—after trial testimony on the average length of stay—the Court held that the facility would not be a dwelling. First, it determined that 14.8 days (the average resident stay) was not a significant period of time. Second, it determined that the residents would not view the facility as a place to return to because they would live there solely for treatment. Third, it determined that the residents would be like mere transients because they would not view the facility as a permanent residence and, as pointed out, they would

be there solely for treatment.

Before we begin the analysis in this case, we note that other courts have also addressed similar issues. Some have applied the Fair Housing Act to various facilities without explicitly addressing the "dwelling" question.[7] *See, e.g.*, *Turning Point, Inc. v. City of Caldwell*, 74 F.3d 941, 945 (9th Cir. 1996) (homeless shelters); *United States v. S. Mgmt. Corp.*, 955 F.2d 914, 923 (4th Cir. 1992) (drug- and alcohol-treatment facility). Several other courts have addressed the issue, coming out on both sides. *See, e.g.*, *Schneider v. County of Will*, 190 F. Supp. 2d 1082, 1087 (N.D. Ill. 2002) (a bed and breakfast is not a dwelling); *Cohen v. Twp. of Cheltenham*, 174 F. Supp. 2d 307, 323 (E.D. Pa. 2001) (a children's group home with an anticipated stay of nine or ten months is a dwelling); *Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123, 135 (D.

---

[7] And both the Sixth Circuit and (perhaps) Congress suggest that group homes are presumably dwellings. *See, e.g.*, *Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996) ("It is well-settled that the FHAA applies to the regulation of group homes."); H.R. Rep. No. 100-711, at 24 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2185 (discussing the kinds of discrimination the Committee intended to prohibit under the FHAA, and noting in particular "the enactment or imposition of health, safety or land-use requirements on congregate living arrangements among non-related persons with disabilities").

10

Conn. 2001) (group homes for alcohol and drug treatment, in which residents stayed on average six weeks, are dwellings); *Garcia v. Condarco*, 114 F. Supp. 2d 1158, 1163 (D.N.M. 2000) (a city jail is not a dwelling); *Project Life, Inc. v. Glendening*, No. WMN-98-2163, 1998 WL 1119864, at *2 & n.4 (D. Md. Nov. 30, 1998) (suggesting that a decommissioned Navy hospital ship offering one-month stays to women recovering from substance abuse would be a dwelling); *Villegas v. Sandy Farms, Inc.*, 929 F. Supp. 1324, 1328 (D. Or. 1996) (cabins occupied by migrant farm workers during the five-month harvest season are dwellings); *Hernandez v. Ever Fresh Co.*, 923 F. Supp. 1305, 1308–09 (D. Or. 1996) (same).

## B.

To repeat what we quoted above from *Columbus Country Club*, two factors determine whether a specific facility is a dwelling under the Fair Housing Act. First, we must decide whether the facility is "intended or designed" for occupants who "intend to remain in the [facility] for any significant period of time." 915 F.2d at 881. Second, we must determine whether those occupants would "view [the facility] as a place to return to" during that period. *Id.*

**1.** *Is the facility intended or designed for occupants who would intend to remain for a significant period of time?*

11

We have not defined what is a "significant period of time" other than to say that (1) five months is significant, *id.*, and (2) "for the rest of [the occupants'] lives" is significant, *Hovsons*, 89 F.3d at 1102. Cases from other courts, cited above, have found sufficient stays ranging from one month to four years.

Trial testimony here put the likely average stay at the proposed facility at 14.8 days. In Greenway's "early days," the average stay was 30 days. (In fact, at least one Greenway resident stayed more than a year.) The 14.8-day stay appears to result chiefly from caps on health-insurance funding, because people—those on "scholarship"—who stay at Greenway's expense often stay longer than that.

But the short, funding-limited, average stay is not dispositive here. Congress considered a dwelling to be a facility "which is occupied as, or designed or *intended*[8] *for occupancy*

---

[8] The Board argues that, because the Lakeside facility was built as a hotel, it cannot meet § 3602(b)'s requirement that a dwelling be "designed or intended for occupancy . . . as a residence." We disagree. Though the facility was built as a hotel, Greenway was planning to turn it into a drug- and alcohol-treatment center. Somewhat analogously, *Baxter* (which we approved of in *Columbus Country Club*) involved an office building that was intended to be converted into an AIDS hospice. 720 F. Supp. at 731. As in *Baxter*, we look here to Greenway's intent to make the Lakeside property a residential

*as*, *a residence* by one or more families." 42 U.S.C § 3602(b) (emphasis added). The facility (as we infer from the experience of Greenway's other facilities) is intended to accommodate 30-day stays as a matter of course and even longer stays on occasion. Congress did not, by its words, require only that a facility be "occupied as" a residence. Thus, that health-insurance funding limits some residents to 14.8 days or less does not itself deprive the proposed Lakeside facility of its residential status.

Moreover, the 14.8-day stay is an average. This suggests that some people—possibly half, depending on how the average was calculated—stay longer than 14.8 days. The residents on "scholarship," for example, stay longer because they are not limited by funding. In any event, the statute refers to "any building, structure, *or portion thereof*." 42 U.S.C. § 3602(b) (emphasis added). Some rooms in the facility—*i.e.*, a "portion thereof"—would house residents staying for extended periods, thereby satisfying with ease the significant-stay factor.

While 14.8 days is much shorter than the five months we have previously held to have been a "significant period of time," it is certainly longer than the typical stay in a motel[9] or a bed

treatment center.

[9] In 2004, 63% of business travelers, and 73% of leisure travelers, spent only one or two nights per hotel stay. Am. Hotel & Lodging Ass'n, *2005 Lodging Industry Profile* 4 (2005),

13

and breakfast, which have been held not to be dwellings under the Fair Housing Act, *see Schneider*, 190 F. Supp. 2d at 1087; *Patel*, 483 F. Supp. at 381.  In this context, we conclude that the 14.8-day average stay at the proposed facility is more nuanced than perceived at first blush, and qualifies that facility under the first factor of *Columbus Country Club*.

## 2. *Do occupants view the facility as a place to return to?*

*Columbus Country Club*'s second factor ("place to return to") was significant in that case, as club members returned to their bungalows every summer.  What we meant by viewing a bungalow as a "place to return to" is that the country club's members saw their individual bungalows as homes.  The members repeatedly returned to the same bungalow because they felt at home there.[10]  Similarly, we noted in *Hovsons* that, "[t]o the handicapped elderly persons who would reside there, [the nursing facility] would be their *home*, very often for the rest of their lives."  89 F.3d at 1102 (emphasis added); *see also Villegas*, 929 F. Supp. at 1328 ("Like the occupants of a homeless shelter, during the farmworkers' employment . . . , the

---

http://www.ahla.com/pdf/Lodging-Ind-Profile-2005.pdf.

[10]  The members did not actually own particular bungalows.  They owned the land collectively and leased the bungalows from the club.  *Columbus Country Club*, 915 F.2d at 879.

cabins are their *homes*." (emphasis added)).[11]

Trial testimony about the experience at other Greenway facilities showed that the Lakeside residents would eat meals together (separated by gender), return to their rooms in the evening, receive mail at the facility, and make it their "residence" while they were there. Lakeside's counsel at oral argument added that Greenway residents hung pictures on their walls and had visitors in their rooms. Although residents in treatment were apparently not allowed off the grounds of the facility unsupervised, testimony showed that treated it like a home for the duration of their stays. This satisfies (though barely) the second factor of *Columbus Country Club*.

\* \* \* \* \*

Because the Lakeside facility was intended to house persons for a significant period of time and because those persons would have viewed it as their home during that time, we hold that it is a dwelling under the Fair Housing Act.

## C.

Lakeside argues in its opening brief that, if we hold that

---

[11] On the other hand, visitors to motels and bed and breakfasts do not see those places as their homes. *See Schneider*, 190 F. Supp. 2d at 1087; *Patel*, 483 F. Supp. at 381.

the proposed facility is a dwelling, we should also decide in its favor on (1) whether the ordinance amendment was discriminatory and, if so, (2) whether its adoption was properly justified. The Board argues that these issues are not before us on this appeal.

We agree with the Board. These issues were headed to the jury before the District Court deflected them with its judgment as a matter of law. Having held that the facility is a dwelling, we remand these issues to be determined.

## IV.  Conclusion

We hold that the facility intended by Greenway as a drug- and alcohol-treatment facility is a dwelling under the Fair Housing Act. Therefore, we reverse the District Court's order and remand the case for further proceedings.