21 F.3d 1111
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eva ALVARADO, Plaintiff-Appellant,
v.
HEALTH NET, INC.; Gretchen H. Gorman; Michael Close,
Defendants-Appellees.
 No. 92-56104.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1994.
Decided April 19, 1994.
 
 1
 Before: BRIGHT*, WIGGINS, and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Eva Alvarado, plaintiff-appellant, is a Hispanic woman and former employee of Health Net, defendant-appellee. Defendants-appellees Gorman and Close are management-level employees of Health Net who exercised supervisory authority over plaintiff-appellant. Alvarado alleges she was the victim of employment discrimination on the basis of race and national origin, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e to 2000e-17, and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. Sec. 1981.
 
 
 4
 The district court granted defendants-appellees' motion for summary judgment. The district court ruled that Alvarado failed to create a genuine issue of material fact as to whether defendants-appellees violated Title VII. Alvarado appeals from the grant of summary judgment. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS BELOW
 
 5
 Alvarado began working for Health Net on August 10, 1987 in a clerical position titled Administrative Support Representative for the Sales and Marketing Division. In 1988, she was promoted to the position of Secretary B. Then, in 1989, she was promoted again to the position of Lead Secretary. In September of 1990, her supervisors reported in job performance appraisals, "Her performance has been excellent," and "Eva continues to improve and assume more and more responsibility." On February 13, 1991, Alvarado was assigned to a new supervisor, defendant-appellee Gorman, who became the new Regional Sales and Marketing Manager. Gorman was under the direct supervision of defendant-appellee Close, who was the Regional Director of Sales and Marketing.
 
 
 6
 In March of 1991, Gorman asked Alvarado what her career goals were. Gorman had asked every other employee under her direct supervision the same question. Alvarado responded that she wished ultimately to advance to the position of Marketing Analyst and noted that she was already performing such work on a substitute basis.[1] Alvarado contends that Gorman responded, in a "sassy" tone, " 'Why would you want to do that?' " Alvarado also alleges that Gorman then stated, " 'I don't understand you people.' " Alvarado testified that Gorman said this "in a frustrating way," which Alvardo explained to mean, "[Gorman] just took a deep breath." Gorman denies making any racial slurs or racially derogatory remarks at this March 1991 meeting, or at any other time.
 
 
 7
 In addition, Alvarado alleges that, throughout this period, Gorman treated Alvarado differently than the other employees. Specifically, Alvarado asserts that Gorman placed "an unreasonable amount of work" on her and "was just overloading [her] constantly." Gorman denies ever treating Alvarado "any differently than any other person because of her race, ethnic background or national origin."
 
 
 8
 In June of 1991, the Sales and Marketing Division engaged in a reorganization. An administrative decision was made to create a new Sales Secretary position to provide account executives with support staff. Alvarado was given the option of filling this newly designated position, but was advised that it was a lateral move which would not result in a pay increase. Gorman and Close assert that they offered Alvarado the position pursuant to Alvarado's previously expressed interest in sales.
 
 
 9
 On June 18, 1991, Alvarado inadvertently discovered an intra-office memorandum written by Gorman, indicating Gorman's intention to hire a new Lead Secretary. Alvarado alleges that Gorman intended to replace her, a Hispanic, with a white person. Alvarado cites Gorman's memorandum as support for this assertion. Gorman's memorandum does not support this assertion, however. Specifically, Alvarado reports that the memorandum states, "In my mind Eva does not fit...." This excerpt is misleading. The complete quotation provides, "Hire a Lead Secretary. This is a very importent [sic] position. I need someone whom I can count on and who will 'supervise' activities while you and I are on the road. In my mind, Eva does not fit this position." The complete quotation indicates that Gorman believed Alvarado did not fit the employment criteria of a particular job position. Moreover, Alvarado does not point to, nor can we find, any (other) evidence in the record that supports Alvarado's assertion that Gorman intended to replace Alvarado, a Hispanic, with a white person.
 
 
 10
 Gorman does express in her memorandum apprehension about the possible consequences of demoting Alvarado to the Sales Secretary position. Specifically, Gorman notes, "I'm concerned about the impact of Eva transferring down to a Sales Secretary position. In terms of performance, I can document why she shouldn't continue to act as Lead Secretary, but I need to work this out ... before we do anything." Gorman does not elaborate upon the cause for her concern.
 
 
 11
 In July of 1991, Alvarado told Close that she did not want the Sales Secretary position. Rather, she wished to remain in her present position as Lead Secretary. Indeed, Alvarado did continue in the position of Lead Secretary until September 17, 1991 when Alvarado left on long-term disability leave. (Health Net employees are allowed up to six months in long-term disability leave.) Alvarado contends that she suffered stress and shock to her nervous system as a result of the racial hatred and harassment exhibited by defendants-appellees.[2] The district court specifically noted that Alvarado never provided any evidence which explained how or why the alleged harassment was so extensive as to necessitate disability leave.
 
 
 12
 Also in July of 1991, Alvarado asserts, she sought but was denied the opportunity for further job training and advancement. Specifically, Alvarado alleges, she sought specialist training on MacIntosh computers. She contends that Close denied her request, stating, " 'Not you Eva.' " Alvarado further alleges that defendants-appellees then provided such training to a white employee, Mary Pulvino, whose experience and seniority were less than that of Alvarado. Close denies ever refusing Alvarado "any type of training which was given to any other lead secretary in her same position." The district court specifically found that Alvarado did not present any evidence to support her allegations.
 
 
 13
 Defendants-appellees note that during Alvarado's tenure at Health Net from August 1987 to September 1991, Alvarado never once requested a promotion to any other position. Alvarado admitted that she never made a formal, written request for a promotion. Alvarado also indicated, however, that she had informally requested and was summarily denied a promotion to a marketing analyst position. But, Alvarado did not comply with Health Net's "Placement Request" procedures in requesting this marketing analyst position.[3] Furthermore, the district court specifically found that Alvarado failed to present any evidence that she was, in fact, formally denied this marketing analyst position.
 
 
 14
 On December 5, 1991, Alvarado filed her complaint in the district court. She requested a jury trial and sought preliminary and permanent injunctions barring further discriminatory employment practices, as well as $200,000 in compensatory damages and $5,000,000 in punitive damages, and prejudgment interest. Alvarado also sought attorneys' fees.
 
 
 15
 Substantial discovery was undertaken by both plaintiff and defendants. On May 22, 1992, defendants filed a motion for summary judgment as to all causes of action. To oppose defendants' Motion for Summary Judgment, Alvarado prepared the declaration of Arturo Montoya. Montoya is a Hispanic man and former management-level employee of Health Net. Montoya testified that he resigned because he believed Hispanics were denied promotional opportunities at Health Net. Montoya further stated that, while at Health Net from March 1984 until May 1989, he witnessed job classifications through which Hispanics were "segregated out of responsible, managerial positions, and [were] instead frozen into lower level and less responsible positions within Health Net." Montoya also asserted that he witnessed a hostile work environment in which Hispanics were ridiculed by members of Health Net management for "speaking with an accent," "looking too Hispanic," "looking too Macho," and "keeping the birthrate high."
 
 
 16
 On July 29, 1992, the district court granted defendants-appellees' motion for summary judgment. On August 28, 1992, Alvarado filed a notice of appeal.
 
 DISCUSSION
 I. SUMMARY JUDGMENT
 
 17
 We review de novo the district court's grant of a motion for summary judgment. FDIC v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), cert. granted, 114 S.Ct. 543 (1993).
 
 
 18
 Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 2000e-2(a)(1). A plaintiff may show a violation of Title VII "by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991).
 
 1. Disparate Treatment
 
 19
 In a disparate treatment case, a plaintiff must prove discriminatory intent. International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). The plaintiff must establish a prima facie case by introducing evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The evidence may be either direct or circumstantial. Furthermore, the amount of evidence which plaintiff must produce is "very little" in order to raise a genuine issue of fact regarding an employer's motive. Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir.1985), amended, 784 F.2d 1407 (1986).
 
 
 20
 Alvarado insists that she produced enough evidence to establish a prima facie case. First, Alvarado presented the fact that defendants-appellees offered her the Sales Secretary position. She argues that defendants-appellees made the offer so they could hire a white person for the Lead Secretary position. Second, Alvarado offered her belief that Gorman overloaded her with work because Alvarado is Hispanic.
 
 
 21
 We find that Alvarado did not establish a prima facie case of disparate treatment. Alvarado has not produced even "very little" evidence of discriminatory intent. Cf. Lowe, 775 F.2d at 1009. First, Alvarado did not produce any evidence that she was, in fact, to be replaced with a white person. Rather, this is a bald assertion which she did not support. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir.1989) (finding that a bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment). Furthermore, Alvarado was permitted to remain in the Lead Secretary position until she decided to leave Health Net.
 
 
 22
 Second, Alvarado did not introduce any evidence that she was, in fact, given an excessive workload. And more importantly, she did not present evidence which demonstrated that she alone among Gorman's staff was overworked, or that Hispanic members of Gorman's staff in general were assigned an unreasonable amount of work. Finally, Alvarado cannot now offer as evidence the fact that she was never promoted because she never applied for a promotion. Moreover, Alvarado did not produce any evidence that she was ever denied any training which was given to another Lead Secretary or a less qualified white person.
 
 2. Disparate Impact
 
 23
 Disparate impact involves a facially neutral employment policy or practice which has an unequal impact on members of a class protected by Title VII. Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). A plaintiff must identify the specific employment policy or practice she is challenging. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988). The plaintiff must then prove causation. Id. She must "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected" class. Id.
 
 
 24
 Alvarado contends that Health Net imposes job classifications that cause Hispanics to be segregated from higher level positions. As evidence, she offers the testimony of Montoya, who makes similar assertions. (Montoya stated that Hispanics were "segregated out of responsible, managerial positions, and [were] instead frozen into lower level and less responsible positions within Health Net.")
 
 
 25
 We find that Alvarado did not establish a prima facie case of disparate impact. While Alvarado vaguely described a job classification system, she did not identify a specific Health Net policy or practice that has an unequal impact on Hispanics. Furthermore, she did not provide any statistical evidence to support her allegation that Health Net segregates Hispanics from higher level jobs.
 
 
 26
 Moreover, Alvarado cannot rely on Montoya's declaration. Because Montoya resigned in May of 1989, his testimony necessarily could not pertain to the conditions of employment at Health Net during the time period at issue in this case. Montoya had no personal knowledge of the work environment to which Alvarado was subjected. Consequently, any evidence of disparate impact on Hispanics at Health Net provided by Montoya's testimony cannot be used by Alvarado to establish a prima facie case.
 
 3. Hostile Work Environment
 
 27
 "A hostile work environment requires the existence of severe or pervasive and unwelcome verbal and physical harassment because of a plaintiff's membership in a protected class." Sischo-Nownejad, 934 f.2d at 1109; see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). The harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Id.
 
 
 28
 Alvarado contends that she was subjected to a racially hostile work environment which included threats, racial slurs and crude depictions of Mexican-Americans. First, Alvarado offers the alleged racial slurs made by Gorman in response to Alvarado's career goals. Specifically, Alvarado alleges that Gorman responded, "Why would you want to do that?" and "I don't understand you people." Second, Alvarado suggests that she was generally subjected to racial slurs such as "You people have too many babies," and "You people drive up the cost of health insurance." Finally, Alvarado offered Montoya's declaration in which he identified several racial slurs typically heard at Health Net.
 
 
 29
 We find that Alvarado did not establish a prima facie case of a racially hostile work environment. Alvarado did not produce any specific evidence that demonstrates that severe or pervasive harassment existed at Health Net. First, Gorman's two comments cannot reasonably be said to constitute severe verbal harassment. For example, Alvarado contends that "I don't understand you people" is a racial slur. But, this is not clear. We cannot know to whom Gorman was referring: all of the employees directly under her supervision; all those who want to do, or are already doing, marketing analysis; all young women who have not received a college education, or, as Alvarado asserts, all Hispanics. Moreover, the " 'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' is not, by itself, actionable under Title VII." Ellison v. Brady, 924 F.2d 872, 876 (9th Cir.1991) (quoting Meritor, 477 U.S. at 67 (quoting Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir.1971), cert. denied, 406 U.S. 957 (1972))); Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438-39 (9th Cir.1990) (noting that a stray remark of arguably discriminatory character is insufficient to establish discrimination); see also Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's supervisor was insufficient to avoid summary judgment for defendant).
 
 
 30
 Second, the racial slurs Alvarado alleges to have been generally subjected to at Health Net lack specificity. For example, Alvarado did not indicate who made the slurs. Were they made by management or staff? More importantly, were they made by either Gorman or Close? Similarly, Alvarado did not indicate how often the slurs were heard. Were these racial slurs isolated events, heard periodically, or daily occurrences?
 
 
 31
 Finally, the testimony of Montoya cannot be considered in deciding whether Alvarado established a prima facie case. Because Montoya resigned in May of 1989, his testimony necessarily could not pertain to the conditions of employment at Health Net during the time period at issue in this case.
 
 
 32
 II. FRIVOLOUS APPEAL?
 
 
 33
 Defendants-appellees request that this court award them $15,000 in attorneys' fees under Fed.R.App.P. 38 because Alvarado's appeal is frivolous. Specifically, they assert that Alvarado had no grounds to file the underlying complaint or the instant appeal.
 
 
 34
 Appellate courts have discretion to award attorneys' fees as a sanction for bringing a frivolous appeal. Fed.R.App.P. 38; Glanzman v. Uniroyal, Inc., 892 F.2d 58, 61 (9th Cir.1989). "An appeal is considered frivolous in this circuit when the result is obvious or the appellant's arguments are wholly without merit." McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981) (citations omitted). We decline to sanction Alvarado for bringing this appeal. Although her appeal lacks merit, it is not wholly without substance; thus, it is not necessarily frivolous. McCarthy v. Mayo, 827 F.2d 1310, 1318 (9th Cir.1987).
 
 CONCLUSION
 
 35
 For the foregoing reasons, we affirm. Alvarado has not set forth specific evidence showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e). Alvarado failed to establish a prima facie case on any of the three theories upon which a plaintiff can show a Title VII violation. Her bald assertions that genuine issues of material fact exist do not preclude the use of summary judgment. Harper v. Wallingford, 877 F.2d at 731. We decline to sanction Alvarado, however, for bringing this appeal.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Alvarado asserts that she also indicated that she would like to begin training as an Assistant Marketing Analyst. Defendants-appellees deny this assertion
 
 
 [2]
 Alvarado remained on long-term disability leave until Health Net terminated her employment on July 7, 1992. Alvarado had already exceeded the six-month maximum leave by four months
 
 
 [3]
 The Health Net employment handbook provides that an employee interested in a posted job opportunity should complete a "Placement Request" which should be reviewed by the employee's supervisor and then submitted to Human Resources