**Dale E. HARPER, Plaintiff–Appellant,**

v.

**Clyde WALLINGFORD; Larry Kincheloe; W.L. Kautsky; an Unnamed Mailroom Staff Member at W.S.P., a/k/a "D.S.", Defendants–Appellees.**

No. 87–4418.

United States Court of Appeals, Ninth Circuit.

Submitted March 10, 1989 [1].

Memorandum Filed May 10, 1989.

Order and Opinion Filed June 14, 1989.

---

1. The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Dale E. Harper, Seattle, Wash., in pro. per.

John Scott Blonien, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before WRIGHT and ALARCON, Circuit Judges, and TEVRIZIAN,[2] District Judge.

## ORDER

The memorandum disposition filed May 10, 1989, is redesignated an authored opinion by Judge Tevrizian.

## OPINION

TEVRIZIAN, District Judge:

Background:

Plaintiff–Appellant Dale E. Harper, an inmate at the Washington State Penitentiary, brought this action *pro se* under 42 U.S.C. Section 1983 alleging that prison authorities had violated his First Amendment rights by withholding mail. Plaintiff sought declaratory, injunctive, and monetary relief. The district court awarded summary judgment in favor of the defendants. We affirm.

The mail in question was from the North American Man/Boy Love Association ("NAMBLA") and consisted of a membership application and a copy of the organization's bulletin. Prison mail room employees refused to deliver the material to plaintiff and notified plaintiff of their intentions. Prison officials refused to deliver the materials to the plaintiff because they felt the material threatened prison security and therefore violated Washington State Department of Corrections Policy Directive 450.020(6)(c). Plaintiff unsuccessfully appealed the decision through the prison grievance system.

Plaintiff is incarcerated as a result of convictions for Robbery in the First Degree While Armed With A Deadly Weapon, Second Degree Burglary, and two counts of First Degree Robbery With a Deadly Weapon. Plaintiff violated his parole on a 1965 conviction for breaking and entering, by committing lewd and immoral acts, namely sodomy on a six year old boy at knife point.

Prior to their successful motion for summary judgment, defendants had moved for summary judgment on the basis that prison officials were justified in censoring obscene or pornographic material. The district court denied this initial motion for summary judgment on the grounds that the defendants had not presented statistics or other substantial testimony to support a claim that such materials posed a threat to prison security.

Defendants renewed their motion for summary judgment. They argued that the NAMBLA and the newsletter it prints espouse consensual sexual relationships between male adults and juvenile males. Defendants argued that the NAMBLA materials were withheld by the prison mailroom supervisor pursuant to Department of Corrections Policy Directive 450.020(6). This directive authorizes the prison administration to withhold publications which "constitute a threat to the order and security of the institution." The directive further provides that publications may be declared a threat to the order and security of the institution if "it may be reasonably thought that the material would incite, aid, or abet the performance of physical violence or criminal activity upon an individual or group." 450.020(6)(c)(2). Defendants maintained that the denial of NAMBLA publication was proper under the directive for two reasons: first, the material is detri-

2. Honorable Dickran Tevrizian, United States District Judge for the Central District of California, sitting by designation.

mental to the rehabilitation of a segment of the prison population; second, the material poses a threat to the order and security of the institution.

Defendants argue that once material such as the NAMBLA bulletin is allowed in the institution it is likely to be widely circulated among the inmates. Defendants attached the affidavit of the Superintendent of the Washington State Penitentiary, Mr. Lawrence Kincheloe, in support of this proposition. Mr. Kincheloe's affidavit also states that using cell searches would not be nearly as effective in stopping the passing or trading of materials as prohibiting the initial introduction of the materials into the prison.

With regard to the harmful effect of NAMBLA material on rehabilitation, defendants attached the affidavit of Dr. Paul Copeland to their motion for summary judgment. Dr. Copeland is a contract psychiatrist for the Washington State Penitentiary. Dr. Copeland stated that in his professional opinion, Mr. Harper has an anti-social personality and exposure to material like the NAMBLA newsletter would increase the likelihood of anti-social behavior. Further, although it was not clear that the plaintiff is a pedophile, the fact that he is an anti-social personality and he has sodomized a child in the past make it more likely that he will commit such an act in the future. Dr. Copeland found that exposure to NAMBLA materials could affect plaintiff's impulse control by suggesting that such behavior was appropriate. Dr. Copeland concluded that plaintiff's rehabilitation would be harmed if he was allowed to receive the NAMBLA publication at issue or any other literature that indicates that sexual conduct with children is socially appropriate.

Dr. Copeland's affidavit states that in addition to being harmful to the plaintiff's rehabilitation, exposure to the NAMBLA materials in question would be harmful to the rehabilitation of pedophiles and of inmates categorized as having anti-social personalities. The latter group comprises 60–80% of the inmates at Washington State Penitentiary.

Mr. Kincheloe's affidavit states that there are two ways that the NAMBLA material promotes violence in prison. First, inmates who are identified as or suspected of being pedophiles or homosexuals are a favorite target for violence since many incarcerated felons were sexually abused as children. Therefore inmates who possess materials that advocate sexual abuse of children may be subject to violent attacks from inmates. Second, exposure to the NAMBLA materials may encourage pedophiles in act in an aggressive or violent way toward weaker or younger inmates.

Plaintiff opposed the motion for summary judgment. Plaintiff moved to strike the use of portions of his juvenile court records. Plaintiff argued that defendants had failed to show that there were no issues of material fact in dispute.

The district court granted summary judgment in favor of the defendants. The district court found that defendants had introduced ample evidence to support their assertion that the NAMBLA bulletin posed a threat to prison security and that prison regulations therefore justified withholding it from the plaintiff. The defendants were found to have shown that no genuine issue of material fact exists in this case. The district court found that plaintiff had failed to present evidence beyond the allegations of his pleading to indicate that the bulletin does not pose such a threat.

Plaintiff appeals on several grounds. First, he argues that it was reversible error for the district court to have dismissed the case with prejudice because this will prevent him from filing similar actions alleging deprivation of First Amendment rights against prison officials in the future. Second, plaintiff argues that summary judgment was inappropriate because it was based on conclusory allegations of threats to prison security, order, and rehabilitation. Third, he argues that it was error for the district court to grant summary judgment dismissal with prejudice when defendants have violated his first amendment rights. Fourth, he argues that instead of granting summary judgment against him, the district court should have allowed him to

amend his complaint challenge the constitutionality of the prison policy directive.

We affirm for the reasons given by the district court judge.

Discussion:

We review the trial court's entry of summary judgment *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). We are governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). *Id.* Under that standard, summary judgment is proper only where "the pleadings, deposition, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. FRCP 56(e). However, no defense to an insufficient showing is required. *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir.1978). A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, *supra*, at 477 U.S. 257, 106 S.Ct. at 2514.

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

In both, *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the United States Supreme Court directly addressed the standard for review appropriate for prison regulations which impinge on a prison inmate's constitutional rights.[3] In both of these cases the Supreme Court rejected the application of "strict scrutiny" analysis to this type of prison regulation. *Turner* at 482 U.S. 89–90, 107 S.Ct. 2261–62; *O'Lone* at 482 U.S. 349–50, 107 S.Ct. 2404–05. Instead, the Court decided that the prison regulation must only pass a reasonable relationship test: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner* at 482 U.S. 89, 107 S.Ct. 2261.

In *Turner*, the Court applied the reasonable relation test to uphold a prison regulation which permitted correspondence between immediate family members who are inmates in other correctional institutions and correspondence between inmates concerning legal matters. Under the regulation other correspondence between inmates is permitted only if it was determined to be in the best interest of the parties involved. The *Turner* Court also used the reasonable

---

**3.** After this panel originally submitted its memorandum for filing on May 3, 1989, the United States Supreme Court decided *Thornburgh v. Abott, et al.*, —— U.S. ——, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In *Thornburgh,* the Court affirmed the standard of review articulated in *Turner, supra* regarding prison regulations which allow prison officials to restrict the receipt of publications by inmates. Our decision is fully consistent with *Thornburgh.*

relation test to strike down a prison regulation which permitted an inmate to marry only with the permission of the superintendent of the prison. Under this regulation, the superintendant's approval was only to be given when there was a compelling reason.

In *O'Lone* the Court, upheld prison work policies which prevented some Muslim prisoners from attending weekly Friday religious services. The Court ruled that the policies were reasonably related to legitimate penological interests and therefore did not violate the free exercise clause of the first amendment.

■ The Supreme Court suggested that several factors are to be considered in determining the reasonableness of a challenged prison regulation. These include (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates; (3) the impact that accommodation of the asserted right will have on guards, other inmates, and prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *See Turner*, at 482 U.S. 89–90, 107 S.Ct. 2262; *O'Lone* at 482 U.S. 350–52, 107 S.Ct. 2405; *McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir.1987).

In previous cases, we have applied the standards enunciated in *Turner* and *O'Lone* to affirm district court holdings of summary judgment against prisoners who challenged certain prison regulations. *See Standing Deer v. Carlson*, 831 F.2d 1525 (9th Cir.1987)(upholding prison dress regulation prohibiting wearing of headgear, including religious headbands, in dining hall over challenge by Native American inmates that the regulation unduly impinged the free exercise of religion); *Allen v. Toombs*, 827 F.2d 563 (9th Cir.1987) (upholding prison regulations denying Native American inmates in high security confinement access to a religious ceremony where the ceremony involved materials which posed a substantial security risk); *McCabe v.*

*Arave*, 827 F.2d 634 (9th Cir.1987). *Cf. McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987) (reversing summary judgment against Jewish prisoner that prison had denied him his right to practice his religion; district court erred by failing to rule on prisoner's motions for a continuance and for appointment of counsel before granting motion for summary judgment and by considering defendants' motion to dismiss as a motion for summary judgment without giving notice of the conversion.)

We now evaluate the prisoner's claim in light of the four factors listed above.

**A. Whether the regulation has a logical connection to the legitimate government interests invoked to justify it.**

A difficulty presented by this case is that the restriction is based on the content of the material at issue. The *Turner* Court explicitly ruled that:

> [T]he governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression.

*Turner*, at 482 U.S. 90, 107 S.Ct. 2262 (citations omitted).

We were faced with a content based prison regulation in *McCabe v. Arave*, 827 F.2d 634 (9th Cir.1987). In *McCabe*, prison officials refused to allow storage of Church Jesus Christ Christian (CJCC) material in the prison chapel library. The district court found that the Aryan Nation was the alter ego of the CJCC and that the literature in question could be banned because it either posed a threat of violence or advocated racism or racial purity. We found that some content regulation was permissible in the prison context. However, not all CJCC material could be banned. Only that CJCC literature which posed a threat of violence (either literature advocating violence or illegal activity as a means of achieving racial purity or literature so racially inflammatory as to be reasonably likely to cause violence) could be constitutionally banned as rationally related to re-

habilitation. Therefore CJCC literature which advocated racism or racial purity but which did not pose a threat of violence could not be banned. *McCabe,* 827 F.2d at 638.

■ In light of *McCabe,* our focus is whether the receipt of NAMBLA material by the petitioner poses a threat of violence, a security threat to the prison, or a threat to another legitimate penological interest. Merely advocating homosexual activity is not a sufficient basis for a ban. In *Espinoza v. Wilson,* 814 F.2d 1093 (6th Cir. 1987), the Sixth Circuit affirmed a district court grant of summary judgment in favor of a prison which withheld publications which advocated homosexuality, including the NAMBLA Bulletin. The Sixth Circuit found that the prison had met its burden of showing that the publications created a potential danger to security even though no actual danger was demonstrated.

■ In the instant case, the defendants provided the penal institution superintendent's affidavit stating that the materials in question could lead to violence committed both by and against its readers. This constitutes a threat to prison security. The security concerns expressed by prison officials are entitled to respect and deference by the courts. *See O'Lone* at 482 U.S. 350, 107 S.Ct. 2405. *See* also *Toussaint v. McCarthy,* 801 F.2d 1080, 1104 (9th Cir. 1986) *cert denied* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), *McCabe v. Arave,* 827 F.2d 634, 637 (9th Cir.1987).

Moreover, the rehabilitation of many inmates could be set back by exposure to the material as discussed in the affidavit of one of the prison's psychiatrists. The superintendent's affidavit also discussed how reading material was passed on and traded among inmates. Plaintiff has been unable to effectively raise an issue of fact about the security threat posed by the material.

Once it is determined that the NAMBLA material at issue poses a threat to security, the remainder of this test is easy to apply. Not allowing appellant to have the NAMBLA material is directly connected to the goal of preventing violence caused by the material in the prison. The regulation and the goal are not nearly "so remote as to render the policy arbitrary or irrational." *Turner* at 482 U.S. 89–90, 107 S.Ct. 2262.

**B. Whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates.**

In *O'Lone,* the Supreme Court rejected the notion that prison officials bear the burden of disproving the availability of alternatives. 482 U.S. 350, 107 S.Ct. 2405. Here, although there is no alternative means for the plaintiff to read the NAMBLA material in question, the plaintiff's access to material which does not violate the prison's security policy remains unaffected.

**C. The impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources.**

The *Turner* Court ruled that "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner* at 482 U.S. 90, 107 S.Ct. 2262. A prison psychiatrist stated that the rehabilitation of 60–80% of the inmates could be adversely affected by exposure to the material. This is a sizable ripple effect onto other inmates by any measure. Therefore, this factor favors upholding the regulation.

**D. The absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.**

Concerning this factor, The *Turner* Court stated the following:

[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative: test: prison officials do not have to set up and

then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner* at 482 U.S. 90–91, 107 S.Ct. 2262 (citations omitted)

Plaintiff has not suggested any alternative accommodation. The prison superintendent has stated that searches for NAMBLA materials which have been introduced to the prison are not as effective as forbidding their introduction in the first place. This factor thus favors upholding the regulation.

CONCLUSION

With regard to the four grounds for plaintiff's appeal, we find that the first ground is simply wrong as a matter of law. A dismissal with prejudice in this case does not mean that plaintiff may not bring suit alleging other future deprivations of his first amendment rights.

 We disagree with plaintiff's second argument that defendants motion for summary judgment is based upon conclusory allegations. Statements of the penitentiary's superintendent and a prison psychiatrist belie this notion. Moreover, in light of the above analysis, we disagree with plaintiff's third argument on appeal that the district court erred because the prison regulation impinged on his first amendment rights.

Finally, we reject plaintiff's fourth argument that instead of granting summary judgment, the district court should have allowed him to amend his complaint to challenge the constitutionality of the prison policy which allows the restriction of mail which threatens prison security. This Court finds that such an amendment would be futile in light of *O'Lone* and *Turner*. More importantly, however, this court feels that the plaintiff's suggestion would constitute an abuse of the liberal policies courts ordinarily engender towards *pro se* liti-

gants. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is unreasonable to think that a busy district court should convert a Section 1983 challenge to the application of a prison regulation into a challenge on the constitutionality of that regulation. District Court judges sit in courtrooms, not classrooms; they are judges, not teachers.

AFFIRMED