SAFECO CREDIT COMPANY, INC., a Washington corporation, Plaintiff,

v.

U.S. BANCORP LEASING & FINANCIAL, INC., an Oregon corporation, Defendant.

Civ. No. 92–1380–MA.

United States District Court, D. Oregon.

Sept. 16, 1993.

Gregg D. Johnson, Steven K. Blackhurst, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, for plaintiff.

M. Christie Helmer, Jeffrey W. Knapp, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant.

## OPINION

MARSH, District Judge.

This is a diversity action in which plaintiff claims defendant breached a written subordination agreement. Both parties have now filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. Based on the following, plaintiff's motion for summary judgment # 17 is GRANTED, and defendant's motion for summary judgment # 23 is DENIED.

## BACKGROUND

Beginning in 1977, defendant U.S. Bancorp Leasing & Financial, Inc. ("defendant") provided third-party Howard–Cooper Corporation ("HCC") with an operating line loan. HCC could draw funds from this line into its checking account with defendant and therefrom pay its bills. As a requirement for this loan, HCC had to deposit all proceeds from its business operations into a cash collateral account. Defendant had "sole control" over the cash collateral account, but, under its loan agreement with HCC, the defendant

was to "administer the account and apply collected funds from the account to the Revolving Credit Line note one business day after collection of such funds."[1] To secure the operating line loan, HCC provided defendant with a "blanket" security interest in HCC's inventory and accounts receivable.

In 1988, plaintiff Safeco Credit Company, Inc. ("plaintiff") agreed to finance the purchase of a log loader for HCC. Prior to financing the log loader, plaintiff asked defendant if it would subordinate its "blanket" security interest in the log loader to the security interest plaintiff would acquire at the time it provided financing to HCC for the log loader. Defendant agreed to do so and the parties entered into two written subordination agreements[2] which provide in pertinent part as follows:

> [A]ny security interest, lien, claim or right, now or hereafter asserted by [defendant] with respect to the [loader] or the cash or non-cash proceeds of the [loader] shall be subject, junior and subordinate to any security interest, lien, claim or right now or hereafter asserted by [plaintiff].

Defendant also executed a UCC–3 form which released any security interest defendant had in the log loader.

On September 17, 1991, HCC leased the log loader to Douglas County Forest Products, a logging company. Thereafter, on September 26, 1991, HCC sold the lease and log loader to Associates Commercial Corporation for $180,000. HCC, without giving notice to Safeco of the sale, deposited the check from the sale into its cash collateral account with defendant. Based on the deposit, defendant reduced HCC's operating line thereby making $180,000 in credit available to HCC.

At the time defendant took possession of the proceeds, HCC owed plaintiff $92,553.35 which was thereafter paid down to $85,-

505.28. Thereafter, HCC filed for bankruptcy. Despite demands from plaintiff, defendant has refused to pay plaintiff any of the proceeds from the sale of the log loader. Based on this refusal, plaintiff has brought this action stating claims for breach of contract, conversion and money had and received[3].

Defendant asserts two defenses to plaintiff's claims. First, defendant contends that the proceeds represented by the check were paid to it in the "ordinary course of business" causing the proceeds to lose their character as identifiable and, thus, terminating plaintiff's security interest pursuant to ORS Chapter 79. Second, defendant claims it is entitled to retain the check proceeds as against plaintiff's perfected security interest since defendant is a "holder in due course" of the check under ORS Chapter 73.

## STANDARD

■ Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989).

■ All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.

---

1. Neither party has provided the court with a complete copy of the loan agreement so I cannot determine whether defendant had any discretion to withhold such transfers from the cash collateral account to the revolving credit line.

2. The two agreements are identical and neither party has provided an explanation as to why two such agreements were entered into.

3. Plaintiff's complaint states a claim for replevin instead of money had and received. However, as defendant no longer has possession of the money at issue, the parties have agreed that plaintiff can state a claim in the pretrial order for money had and received instead of replevin.

1989). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co.*, 638 F.2d 136, 140 (9th Cir.1981).

In responding to a motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138–139 (9th Cir.1987).

## DISCUSSION

■ The parties agree that the check for $180,000 HCC received from the sale of the log loader constitutes "proceeds" as set forth in the subordination agreement. The parties also agree that defendant received these proceeds. By strictly applying the language of the subordination agreement to these agreed upon facts, it is evident that defendant breached the subordination agreement. By receiving the proceeds, defendant exercised a claim or right to them. Yet, pursuant to the agreement, plaintiff had a superior right to the proceeds. By refusing to pay plaintiff on its claim, defendant was asserting a superior right in the proceeds. Such a result is contrary to the subordination agreement and defendant's actions in procuring such a result constitutes a breach of the agreement.

Defendant argues for a more narrow reading of the subordination agreement. Defendant contends that the agreement merely subordinated any security interest defendant had in the loader and its proceeds to any security interest plaintiff had. As such, plaintiff contends the agreement did not prevent defendant from taking the proceeds if it did so pursuant to a recognized exception or defense contained in the Uniform Commercial Code. Defendant then contends it did not breach the agreement because: (1) it handled the proceeds in the "ordinary course" as provided in Comment 2(c) of the Official Comments to UCC § 9–306; and (2)

it was a "holder in due course" under Article 3 of the U.C.C.

However, I do not read the subordination agreement as narrowly as defendant and defendant provides no authority for such a reading.[4] The agreement does not just subordinate any security interest defendant may have, but also *any* claim or right defendant may have in the proceeds from the sale of the loader. The agreement does not contain exceptions for claims or rights defendant might assert under the U.C.C.

Finally, defendant argues that the subordination agreement only gives plaintiff a claim for proceeds it still holds and, thus, plaintiff has no claim as defendant no longer holds the proceeds from the sale of the loader. This argument is without merit. The subordination agreement was breached when defendant exercised a right or claim to the proceeds at a time when plaintiff had a superior right or claim to them. What defendant did with the proceeds after exercising its claim to them is irrelevant. By exercising a claim to the proceeds, defendant obtained a benefit and plaintiff was damaged in contravention of plaintiff's rights under the subordination agreement.

Accordingly, I find that defendant breached the subordination agreement by refusing to pay plaintiff on its claim to the proceeds.[5]

Neither party has briefed the damages issue sufficiently for this court to determine such. Accordingly, plaintiff shall file a brief re damages by September 10, 1993; defendant shall respond by September 21, 1993; and plaintiff may file a reply by October 1, 1993. This issue will be taken UNDER ADVISEMENT on October 4, 1993.

## CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment #17 is GRANTED,

---

**4.** Oddly enough, neither the parties nor I have been able to find any authority dealing with facts similar to those raised in this case.

**5.** Based on this holding, I do not reach the merits of plaintiff's alternative claims of conversion and money had and received. As the three claims are pled, damages recoverable on the conversion and money had and received claims would not exceed the damages available to plaintiff on its breach of contract claim.