29 F.3d 632
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John G. HOLLIDAY, Jr., Plaintiff-Appellant,
v.
ELAHON CENTER, Defendant-Appellee.
 No. 93-36062.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 21, 1994.*
Decided June 24, 1994.
 
 Before: TANG, PREGERSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John G. Holliday, Jr., a Washington state prisoner, appeals pro se the district court's summary judgment for defendant Elahon Center in Holliday's 42 U.S.C. Sec. 1983 civil rights action arising out of Holliday's involuntary commitment to a mental institution. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We review de novo, see Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir.1989), and affirm.
 
 
 3
 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Harper, 877 F.2d at 731. If the moving party carries its burden of "demonstrating the absence of a genuine issue of fact for trial ..., the opponent must set forth specific facts showing that there remains a genuine issue for trial." Harper, 877 F.2d at 731 (citation omitted); see Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
 
 
 4
 In December, 1989, a law enforcement officer took Holliday into custody and brought him to the Vancouver Memorial Hospital ("VMH") for a psychiatric evaluation pursuant to Wash.Rev.Code Sec. 71.05. Sarah White, a county-designated mental health professional ("CDMHP") employed at Elahon Center, was called in to perform the evaluation.[1] Based on her interview with Holliday and information she received from the law enforcement officer and Holliday's father, White determined that Holliday should be detained for evaluation and treatment pursuant to the emergency initial detention procedures set forth in the applicable Washington statute. See Wash.Rev.Code Sec. 71.05.150(2).[2] Holliday refused voluntary hospitalization, however, so White began the process of locating an appropriate facility for Holliday's admission.
 
 
 5
 VMH refused to admit Holliday, citing his need for long-term hospitalization as the reason. White then arranged to have Holliday admitted to Western State Hospital ("WSH").[3] Holliday was hospitalized at WSH but has since been released. Following his release, Holliday filed this action, alleging he was detained without due process and seeking $10 million in damages.
 
 
 6
 To prevail on a section 1983 claim, a plaintiff must prove that the defendant, acting under color of state law, deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or a federal statute. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988). Here, Holliday alleged a deprivation of liberty without due process.
 
 
 7
 The district court held that Holliday failed to state a claim against Elahon Center, the only named defendant, because Holliday's complaint only contained allegations regarding White. Because liability under section 1983 may not be premised on a theory of respondeat superior, see Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir.1984), the district court's determination was correct.[4]
 
 
 8
 The district court also held that even if Holliday were allowed to amend his complaint to name White as a defendant, his claim failed because Holliday failed to show the existence of a genuine issue of fact for trial. We agree.
 
 
 9
 First, Holliday contends he was entitled to be detained either at VMH or the local jail rather than WSH. This contention lacks merit. The definition of "evaluation and treatment facility" set forth in Wash.Rev.Code Sec. 71.05.020(17) specifically excludes jails from the definition. Moreover, the Washington courts have interpreted section 71.02.150, the section pursuant to which Holliday was detained, as allowing a CDMHP discretion in deciding where a particular detainee should be evaluated and treated. See Pierce County Office of Involuntary Commitment v. Western State Hosp., 644 P.2d 131, 133 (Wash.1982) (en banc). Thus, Holliday simply has no liberty interest in being detained at a jail or particular local treatment facility. See Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992) (for liberty interest to exist under state law, law " 'must direct that a given action will be taken or avoided only on the existence or nonexistence of specified substantive predicates.' " (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1094 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987)).
 
 
 10
 Second, Holliday contends he was denied his right to a court hearing. This contention lacks merit. Holliday was initially detained pursuant to the emergency procedures set forth in Wash.Rev.Code Sec. 71.05.150(2). Those procedures do not provide for a court hearing prior to initial detention. See Wash.Rev.Code Sec. 71.05.150(2) (providing that CDMHP may place person in emergency custody for evaluation and treatment for up to 72 hours if CDMHP determines that, as result of mental disorder, person "presents imminent likelihood of serious harm to himself or others, or is in imminent danger because of being gravely disabled"). Holliday therefore was not entitled to a pre-detention judicial hearing.
 
 
 11
 Third, Holliday contends he was denied his right to be represented by Gerald Wear, the designated counsel for detainees at VMH. This contention lacks merit. It is undisputed that White designated the Department of Assigned Counsel at WSH to represent Holliday. Thus, Holliday would have had legal representation if that became necessary.
 
 
 12
 Fourth, Holliday contends he was denied his right to refuse medication. This contention lacks merit. The relevant statute provides that a detainee has a right to refuse medication beginning 24 hours prior to the probable cause hearing which is held after the initial 72-hour detention period to determine whether the detainee should continue in detention. See Wash.Rev.Code Sec. 71.05.200(1)(e). Here, it is undisputed that Holliday was medicated at the time he was brought to VMH to be evaluated by White. Thus, the medication clearly occurred at the beginning of the initial 72-hour detention period. Holliday did not have a right to refuse medication at that time. See id.
 
 
 13
 Fifth, Holliday contends White failed properly to file and serve the detention documents required under the statute. This contention lacks merit. In support of its motion for summary judgment, Elahon Center submitted White's affidavit together with the detention documents White filed. This evidence demonstrates that White in fact timely filed and served the necessary documents. See Wash.Rev.Code Sec. 71.05.160. Because Holliday failed to present specific facts to support his contention that the documents were not timely filed, the district court properly granted summary judgment for Elahon Center on this issue. See Harper, 877 F.2d at 731; Fed.R.Civ.P. 56(e).[5]
 
 
 14
 Sixth, Holliday contends he was denied his right to parental notification. This contention lacks merit. It is undisputed that White was in contact with Holliday's father before she completed her evaluation of Holliday. Thus, assuming without deciding that the statute required White to notify Holliday's parents, White fulfilled her duty.
 
 
 15
 Finally, Holliday contends he was denied his right to go to court in his hometown. Holliday has not cited any authority, nor are we aware of any, to support his asserted "right". We therefore conclude that this contention lacks merit.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Thus, to the extent appellant requests oral argument, the request is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 White has since left her job at Elahon Center
 
 
 [2]
 The officer related details of Holliday's behavior that resulted in his being taken into custody. Holliday's father informed White that Holliday had been released from jail just one week before the incident involved here. During his interview, Holliday admitted to a history of drug use and exhibited erratic and dangerous physical behavior. VMH personnel eventually placed Holliday in restraints
 
 
 [3]
 In her affidavit in support of Elahon Center's motion for summary judgment, White stated that, at the time, if VMH did not admit a detainee for evaluation and treatment, then the detainee customarily was sent to WSH
 
 
 [4]
 Holliday's pleadings do not contain any allegations that Elahon Center was directly liable for failing properly to train or supervise White. See Ybarra, 723 F.2d at 680
 
 
 [5]
 In fact, Holliday never filed an opposition to Elahon Center's motion for summary judgment