**Pedro VILLEGAS et al., Plaintiffs,**

v.

**SANDY FARMS, INC., Defendant.**

**Civil No. 95–623–MA.**

United States District Court,
D. Oregon.

March 1, 1996.

---

Leslea S. Smith, Oregon Legal Services, Oregon City, Oregon, D. Michael Dale, Oregon Legal Services Corporation, Portland, Oregon, for Plaintiffs.

Thomas H. Tongue, Dunn, Carney, Allen, Higgins & Tongue, Portland, Oregon, for Defendant.

## OPINION AND ORDER

MARSH, District Judge.

Plaintiffs bring this action asserting violations of the Federal Fair Housing Act, 42 U.S.C. § 3604 et. seq. and the analogous Oregon statute, ORS 659.033. Defendant seeks summary judgment on the grounds that the housing at issue does not constitute "dwellings" and the housing is not rented to occupants. Plaintiffs cross move for summary judgment on the federal claim, contending that the FHA applies to defendant's cabins, and that defendant's policy of excluding families with children from the smaller cabins violates the Act.

## BACKGROUND

Plaintiffs are two migrant farmworker families. The Villegas family has two children, aged four and two, and the Hernandez family has one child, aged four. Defendant Sandy Farms is a farm in Clackamas County, Oregon, which provides temporary residences to many of its workers in a camp.

Defendant requires employees to enter into a written agreement which provides that defendant may offer cabins to employees, and sets forth the conditions of occupancy. The cabins are available on a first-come, first-served basis. Defendant maintains sixteen larger cabins, each of which hold approximately ten people, and twelve smaller cabins which accommodate four people each. Under defendant's policy, families with children are permitted to live only in the larger cabins. Occupants of the cabins are charged $1.50 per day to cover the cost of utilities and upkeep.

On or about May 20, 1993, plaintiffs arrived at defendant's farm, and inquired about work and housing. The camp manager asked plaintiffs if they had children, and requested that they return the next day. When plaintiffs returned, the camp manager told them that the camp was full.

At the time plaintiffs returned to the camp, there were no larger cabins available. However, there were vacancies in the smaller cabins. During the relevant time period, the camp manager does not recall turning away plaintiffs specifically, although he does generally recall turning away workers with families because there were no larger cabins available. There is no dispute that defendant has a policy which prohibits families with children from living in the smaller cabins, regardless of the size of the family. Thus, while up to four people could reside in a smaller cabin, a family of up to four people which included children would be denied such residence solely on the basis of their familial status.

## STANDARD

■ Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

■ All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Company of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

## DISCUSSION

■ The Fair Housing Act (FHA) prohibits discrimination in housing on the basis of race, color, religion, national origin, handicap and familial status. 42 U.S.C. § 3601 et seq. The Supreme Court considers the language of the FHA "broad and inclusive." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972), and requires that the FHA be given "a generous construction to implement a policy that Congress considered to be of the highest priority." *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1416 (9th Cir.1994) (quoting *Trafficante*, 409 U.S. at 209, 93 S.Ct. at 366–67).

The Act makes it unlawful to "refuse to sell or rent ... or otherwise make unavailable or deny, a dwelling to any person because of ... familial status[.]" 42 U.S.C. § 3604(a). The FHA also prohibits statements "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

■ The FHA applies only to "dwellings." The Act defines a dwelling as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families[.]" 42 U.S.C. § 3602(b). Courts have applied the FHA to homeless shelters, *Turning Point v. City of Caldwell*, 74 F.3d 941 (9th Cir.1996); shelters for homeless and battered women and their families, *Woods v. Foster*, 884 F.Supp. 1169 (N.D.Ill.1995); group homes for recovering drug addicts and alcoholics, *City of Edmonds v. Oxford House, Inc.*, —— U.S. ——, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995); seasonal bungalows, *United States v. Columbus Country Club*, 915 F.2d 877 (3rd Cir.1990), *cert. denied*, 501 U.S. 1205, 111 S.Ct. 2797, 115 L.Ed.2d 971 (1991); and hospice facilities for AIDS patients, *Baxter v. City of Belleville*, 720 F.Supp. 720 (S.D.Ill.1989). The FHA does not apply, however, to lodging for transient guests such as hotels, *Patel v. Holley House Motels*, 483 F.Supp. 374 (S.D.Ala.1979).

■ In determining whether a dwelling is a "residence intended for occupancy" under the Act, courts look to the ordinary meaning of "residence" adopted in *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 548–549 (W.D.Va.1975). *See*

*e.g. Columbus Country Club,* 915 F.2d 877, *Woods,* 884 F.Supp. at 1173, *Baxter,* 720 F.Supp. 720. The *Hughes* court defined a residence as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." *Hughes,* 396 F.Supp. at 549. However, the length of time one expects to live in a particular place is not necessarily determinative. Other factors, such as the absence of an alternative place of residence, may also be critical. *See Woods,* 884 F.Supp. 1169 (homeless shelter is a residence because the occupants live there and not in any other place). In finding an AIDS hospice to be a dwelling under the Act, the court distinguished transients, who the court defined as those who would certainly move on to another residence, from inhabitants who reside in a particular place although the length of the residence may vary. *Baxter,* 720 F.Supp. at 731.

Defendant argues that the FHA and ORS 659.033 are inapplicable because its cabins are neither dwellings nor rented. Defendant focusses upon the temporary nature of the occupancy of its cabins, and further argue that plaintiffs' residences in California belie plaintiffs' argument that plaintiffs viewed defendant's cabins as a place to which to return. Plaintiffs do not dispute that occupancy of the cabins is temporary; defendant allows workers to occupy the cabins only during their employment on the farm. However, plaintiffs' permanent residences are far removed from their places of employment (southern California), and during the growing season plaintiffs reside at the farm and nowhere else.

Because the cabins are occupied by farmworkers and their families for nearly five months of the year, the cabins are far more than mere places of temporary sojourn or transient visit. Like the occupants of a homeless shelter, during the farmworkers' employment by defendant, the cabins are their homes. The nature of the workers' occupancy resembles that of a resident far more than that of a hotel guest. In addition, the nature of the workers' employment relationship with defendant, the fact that workers may only occupy the cabins while employed by defendant, and the fact that the cabins are private accommodations available only to defendant's employees, refute the argument that occupants of the cabins resemble hotel guests.

Further, plaintiffs' ownership of permanent residences elsewhere does not mean that the seasonal lodging provided by defendant is exempt from the FHA. As noted by the Third Circuit, "there is no indication in the statutory language that Congress intended to limit coverage of the Act to year-round places of abode and exempt seasonal dwellings" since to do so would create a broad exception which would violate the letter and spirit of the Act. *Columbus Country Club,* 915 F.2d at 881. Exempting defendant's cabins from the Act would create an exception at odds with the Act's purposes and objectives: to eliminate discrimination in housing. Accordingly, interpreting the FHA broadly as required to effectuate its intent, I find that defendant's cabins are dwellings within the meaning of the FHA.

As for defendants' alternative claim that because it does not rent the cabins to employees, the plain language of the Act makes it unlawful to refuse to sell, rent, **or otherwise make unavailable** a dwelling on the basis of familial status. 42 U.S.C. § 3602(a) (emphasis added). Thus, a dwelling need not be rented to fall under the purview of the FHA. *See Turning Point v. City of Caldwell,* 74 F.3d 941 (9th Cir.1996) (homeless shelters covered by the act); *City of Edmonds v. Oxford House, Inc.,* —— U.S. ——, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (group homes for recovering alcoholics and drug addicts). Thus, defendant's actions in "making unavailable" the smaller cabins on the basis of familial status is a violation of the FHA.

However, even if the federal Act required payment, this requirement would be satisfied. The FHA defines "rent" as "to lease, to sublease, to let and otherwise grant for consideration the right to occupy premises not owned by the occupant." Defendant allows its employees to occupy the cabins in exchange for $1.50 per day, as long as they

are employed by defendant. Accordingly, the occupants' payments of $1.50 per day, combined with their labor, constitute consideration for the right to occupy the cabins.

■ The state law more narrowly defines its coverage to make it unlawful to "refuse to sell, lease, or rent any real property" based on familial status, ORS 659.033, but fails to define rent. Under statutory construction principles outlined by the Oregon Supreme Court in *Portland General Electric v. Bureau of Labor and Industries*, 317 Or. 606, 859 P.2d 1143 (1993), the court determines the intent of the legislature by examining the text and context of the statute and other related statutes. *PGE*, 317 Or. at 610–11, 859 P.2d 1143. The Oregon Residential Landlord and Tenant Act defines rent as "all payments to be made to the landlord under the rental agreement." ORS 90.100(12). The Landlord Tenant Act defines a "rental agreement" as "all agreements, written or oral, and valid rules and regulations ... embodying the terms and conditions concerning the use and occupancy of a dwelling unit and the premises." ORS 90.100(13).[1]

The undisputed facts show that employees enter into a written agreement which provides that defendant may provide the employee with housing under certain terms and conditions. As a written agreement which embodies the terms and conditions of occupancy, the agreement between defendant and employees clearly resembles a rental agreement under Oregon law. Further, the payment of $1.50 per day by the occupants of the cabins to defendant under the terms of the rental agreement falls within the broad definition of rent under Oregon law.

■ Based upon the undisputed facts surrounding the existence and application of the "no families with children regardless of size" rule regarding the small cabins, no genuine issues of fact remain with respect to defendant's liability under the FHA and ORS 659.033. Plaintiff has established that defendant violated the Act and ORS 659.033 by refusing to rent or make available a dwelling

because of familial status, and by making statements indicating a preference with regard to such housing based upon familial status.

### CONCLUSION

Based on the foregoing, defendant's cabins are dwellings subject to the FHA, and defendant's policy of excluding families with children from the smaller cabins constitutes discrimination on the basis of familial status in violation of 42 U.S.C. § 3604 and ORS 659.033. Accordingly, defendant's motion for summary judgment (# 11) is DENIED, and plaintiffs' motion for partial summary judgment (# 17) is GRANTED.

IT IS SO ORDERED.

---

1. In citing these provisions for definitional purposes, I do not mean to suggest that the Oregon Residential Landlord Tenant Act applies to the situation at hand. *See* ORS 90.110(5) (excepting conditional occupancy by an employee from the Act). However, where ORS 659.033 fails to define its terms, the definition of these terms in Chapter 90 provides helpful guidance.