110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Martin E. UNGER, Plaintiff-Appellant,
v.
UNITED STATES of America, Kathleen Hawks, John L. Magathlin,
Robert L. Matthews, Harlin W. Penn, Joseph Crabtree, Liz
Moriarty, Norman Klein, Scott Boatwright, John Doe, Mailroom
Employees 1-3, Defendants-Appellees.
 No. 95-36027.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1997.*
Decided March 18, 1997.
 
 1
 Before: PREGERSON and THOMAS, Circuit Judges, and REED,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Plaintiff-Appellant Martin Unger is a prisoner at the Federal Correctional Institution at Sheridan, Oregon. Sometime in August 1993 a woman known personally to Mr. Unger sent him a photograph in the mail; the photograph showed the woman exposing her breasts and posing in a sexually provocative manner. In accordance with the rules of FCI Sheridan, the photograph was intercepted and withheld from Mr. Unger.
 
 
 4
 After exhausting his administrative remedies, Unger brought suit in federal district court against the United States and officers of the federal Bureau of Prisons for violations of his First Amendment rights, seeking injunctive and declaratory relief, as well as money damages, for the confiscation the photograph.
 
 
 5
 Defendants moved for summary judgment. The district court denied summary judgment to Defendants on Plaintiff's First Amendment claim for injunctive and declaratory relief, and granted summary judgment in favor of Defendants on Plaintiff's other claims. On a "renewed" defense motion for summary judgment, however, the district court reversed its prior ruling, granted summary judgment in favor of Defendants on the remaining claim, and dismissed the action. Plaintiff appeals, assigning as error (1) the district court's failure to apply correctly the doctrine of the "law of the case," and (2) the district court's conclusion that Plaintiff failed to demonstrate a triable issue of material fact as to the constitutional reasonableness of the prison rule against inmate possession of nude or sexually graphic photographs of wives and lovers.
 
 
 6
 Unger does not appear to have raised his law of the case argument in his opposition to the United States' "renewed" motion for summary judgment in the district court, at least not in so many words. He did explicitly argue that the renewed motion contained no new evidence, but his arguments with respect to the "new authority" on which the government relied in its renewed motion focussed solely on facts which distinguished those decisions from his cause, rather than on the question whether those decisions represented a change in controlling law.
 
 
 7
 Neither did Unger argue to the district court that its prior denial of the government's first summary judgment motion was not clearly erroneous and would not work manifest injustice. All told, it cannot fairly be said that he presented his law of the case argument to the district court in a manner sufficient to permit the district court to rule upon it, indeed, there is in the district court's order granting the government's renewed summary judgment motion no mention whatever of the law of the case doctrine. Because appellate panels of this Circuit will ordinarily not consider arguments not properly raised in the trial court, there does exist a substantial question whether Unger is entitled to have this panel consider his law of the case argument at all. In re E.R. Fegert, Inc., 887 F.2d 955, 957 (9th Cir.1989); Rothman v. Hospital Serv., 510 F.2d 956, 960 (9th Cir.1975).
 
 
 8
 Even if a specific issue is raised for the first time on appeal, however, the waiver rule will not bar consideration of the newly raised issue by the appellate court where there exist "exceptional circumstances." Such circumstances exist where the newly raised issue is purely legal in nature, and the record relevant to the matter has been fully developed. United States ex rel. Green v. Northrop Corp., 59 F.3d 953, 957 n. 2 (9th Cir.1995) (citing United States v. Bigman, 906 F.2d 392, 395 (9th Cir.1990)), cert. denied, 116 S.Ct. 2550 (1996); Pacific Express, Inc. v. United Airlines, Inc., 959 F.2d 814, 819 (9th Cir.), cert. denied, 506 U.S. 1034 (1992); In re Professional Inv. Properties, 955 F.2d 623, 625 (9th Cir.), cert. denied, 506 U.S. 818 (1992).
 
 
 9
 In the present appeal, the question whether the district court's decision to grant the government's renewed summary judgment motion violated the law of the case is a purely legal question. The record on appeal contains (a) the original summary judgment motion and exhibits, (b) the renewed motion and exhibits, and (c) the district court's orders denying the first and granting the second. This court therefore has before it all the facts necessary to decide the law of the case issue, and may, in its discretion, reach that issue.
 
 
 10
 But the court should exercise its discretion to decide it the law of the case question only if the question is both (1) central to the case and (2) of substantial importance to the public. Service Employees Int'l Union, Local 102 v. County of San Diego, 60 F.3d 1346, 1350 (9th Cir.1994), cert. denied, 116 S.Ct. 774 (1996); Northrop Corp., 59 F.3d at 958. While the law of the case question may be "central" to this appeal, it surely was never "central" to Martin Unger's First Amendment challenge to a federal prison regulation. And only to the extent the public cares about the orderly progression of federal litigation to a final judgment is the law of the case doctrine of any importance to the American people. We therefore decline to reach the law of the case question, raised for the first time on appeal, and proceed to dispose of this matter on the merits, i.e. on the constitutionality, under Turner v. Safley, of a BOP regulation prohibiting federal prisoners from receiving or possessing personal nude or otherwise sexually explicit photographs.
 
 
 11
 The district court's decision to grant summary judgment in favor of Defendants on Plaintiff's First Amendment claim for injunctive and declaratory relief is reviewed de novo.
 
 
 12
 In determining whether the district court could properly grant summary judgment in favor of Defendants, we therefore examine Plaintiff's claim, the law regarding the proof necessary to prevail on his claim, and the evidence before the court below on summary judgment.
 
 
 13
 Plaintiff-Appellant Unger claims the regulations at FCI Sheridan prohibiting prisoners from possessing nude or otherwise sexually provacative photographs of loved ones violate his federal constitutional rights.[1] Unger correctly grounds his complaint in the First Amendment's guarantee of the right to freedom of expression. See Thornburgh v. Abbott, 490 U.S. 401, 403 (1989); Turner v. Safley, 482 U.S. 78, 83 (1987); Harper v. Wallingford, 877 F.2d 728, 734 (9th Cir.1989).
 
 
 14
 It is of course true that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner, 482 U.S. at 84. In the prison context, however, a court asked to resolve a constitutional complaint filed by an inmate must, to a certain extent, balance the rights of the inmate against the needs of the institution. The Supreme Court in Turner v. Safley announced the standard to be employed when a prisoner challenges the constitutionality of a prison rule: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner, id. at 89.
 
 
 15
 First, in order for a prison rule to be "reasonable" under Turner, there must be a valid, rational connection between challenged regulation and the legitimate governmental interest asserted as justification for the rule. Where the regulation impinges on inmates' freedom of expression, such as the regulation challenged in the instant case, the court must inquire whether the regulation operates in a "neutral" fashion, i.e. without regard to the content of the expression.[2] Second, we must determine whether there exist any alternative means of exercising the asserted right; if other avenues remain available, the prison authorities are entitled to an additional measure of judicial deference with respect to the validity of the challenged rule. Third, we must consider the impact of accommodating the asserted constitutional right on staff and other inmates and on institutional resources: If accommodation will have significant "ripple effects," the court must again accord greater deference to informed discretion of prison administrators. Finally, the challenged rule cannot constitute an exaggerated response to legitimate institutional requirements. The existence of an alternative that fully accommodates a prisoner's rights at de minimis cost to valid penological interests is evidence that regulation is unreasonable; the absence of ready alternatives is evidence that challenged regulation is reasonable. Turner v. Safley, 482 U.S. at 89-91.
 
 
 16
 A prison regulation satisfies the first Turner factor if prison officials can articulate a legitimate governmental interest, and provide "some evidence" that the asserted interest is the actual reason for the regulation. The rule challenged by Plaintiff-Appellant unquestionably satisfies this factor: Prevention of prison violence is at the core of legitimate penological goals. Pell v. Procunier, 417 U.S. 817, 823 (1974). There are in the record affidavits of prison officers avowing that the principal justification for the rule is the prevention of the violence which the stealing, defiling, or viewing of another prisoner's personal nude photographs might cause. See Turner v. Safley, 482 U.S. at 92. Plaintiff-Appellant offered no evidence that prevention of prison violence rule was not, in fact, the true purpose of the rule. Both the U.S. Supreme Court and this court have found valid prison regulations designed to avoid situations that, while not guaranteeing violence, are determined by the warden to create an intolerable risk of disorder. Thornburgh v. Abbott, 490 U.S. at 417; Harper v. Wallingford, 877 F.2d at 733. The evidence of record on summary judgment therefore sufficed to eliminate any factual disputes with respect to the first Turner factor. Casey v. Lewis, 4 F.3d 1516, 1521 (9th Cir.1993).
 
 
 17
 Next to be addressed is the second Turner requirement, that of "alternative avenues." At FCI Sheridan, prisoners may possess hardcore commercial pornography. They may receive sexually explicit letters from loved ones. They may obtain and display nonsexual photographs of loved ones. Mr. Unger is not content: He demands the right to possess sexually explicit photographs of loved ones. But if the right Plaintiff-Appellant seeks to exercise is the right to possess graphic sexual material, that right is vindicated through the prison's permitting inmates to receive commercial pornography and sexually explicit letters from loved ones. If, on the other hand, Mr. Unger seeks to exercise his right to reinforce his emotional connections to people he cares for on the outside, he can certainly receive, collect, and display nonsexual photographs of lovers and family members, and letters from them. See Giano v. Senkowski, 54 F.3d 1050, 1056 (2d Cir.1995). There do not appear of record any disputes over the facts with respect to the second Turner factor. Even a determination that these other "avenues" do not permit the exercise of the precise "right" sued upon, resolution of the second Turner factor in Mr. Unger's favor does not mandate reversal of the summary judgment entered in favor of Defendants-Appellees: The regulation is nevertheless reasonable under Turner. Casey v. Lewis, 4 F.3d at 1522.
 
 
 18
 The third Turner factor deals with the likely effect of prisoners' exercise of the asserted right upon other inmates, prison staff, and the institution as a whole. The basis for the regulation is, in large measure, the likelihood that the display, destruction, or dissemination of personal nude photographs may lead to prison violence. The regulation is designed precisely to protect inmates and staff from the consequences of such violence, and to conserve scarce prison resources.
 
 
 19
 The rationale of the challenged regulation appears irrefutable: The possession by prisoners of personal nude photographs poses security and safety risks quite different from those risks posed by their possession of commercial pornography, or of non-sexual personal photographs, or even of sexually explicit personal letters. The theft, destruction, or defiling of a personal nude photograph is certain to arouse anger of an order quite distinct from that engendered by, for example, the theft of an issue of Hustler. Likewise, the possession of sexually explicit personal letters is far less likely to awaken the interest, envy or disdain of a fellow prisoner than is a sexually graphic personal photograph.
 
 
 20
 There was evidence before the district court, in the form of prison officials' affidavits, that the effect of accommodating Mr. Unger's right to possess personal nude photographs would be an increased risk of prison violence. Such violence harms not only the individuals directly involved, but increases tension among all other inmates and staff, and consumes institutional resources. This is precisely the "ripple effect" which concerned the Turner Court, and counsels even greater judicial deference to the judgment of prison authorities. It must be concluded, therefore, that the third Turner factor weighs heavily in favor of finding the challenged regulation constitutionally valid.
 
 
 21
 The last Turner factor is addressed to the question whether the challenged regulation is an "exaggerated response" to a legitimate institutional need. As noted above, the existence of a ready alternative to the challenged rule which would accommodate the right asserted at de minimis cost to legitimate penological interests constitutes evidence that the regulation is not "reasonable" under Turner. Likewise, the absence of such an alternative is evidence for the opposite conclusion. In the present case, Plaintiff-Appellant has contended, both in the district court and on appeal, for an alternative to FCI Sheridan's absolute ban on nude personal photographs: Mr. Unger suggests that the cost to prison safety and security would be de minimis if prisoners were permitted to possess such photographs, but merely prohibited from displaying them.
 
 
 22
 Defendants-Appellees produced evidence on summary judgment that many of the prisoners at FCI Sheridan are housed, not in cells, but in barracks-style "flats," which are large, open, common areas within the prison housing units. Privacy in these areas is sharply curtailed. Warden Crabtree declared in his affidavit that the intentional and inadvertent viewing, by other inmates, of nude personal photographs in the possession of prisoners housed in the "flats," would be difficult to prevent. Given this undisputed evidence, it cannot reasonably be said that the cost of adopting Plaintiff-Appellant's proposed alternative rule would be de minimis. Defendants-Appellees therefore adequately demonstrated to the district court that the proposed less restrictive alternative--Mr. Unger's "no-display" rule--was rejected because of reasonably founded fears that it would cause greater harm. Defendants therefore succeeded in proving that the challenged rule is not an "exaggerated response" under Turner. Casey v. Lewis, 4 F.3d at 1523. It is the plaintiff's burden to show the existence of a de minimis-cost alternative. Mr. Unger's "no-display" proposal would clearly accommodate his rights, but at an institutional cost significantly more than de minimis.
 
 
 23
 The challenged regulation therefore survives Turner scrutiny. In his opposition to Defendants-Appellees' motion for summary judgment in the district court, Plaintiff-Appellant Unger did not demonstrate any genuine factual dispute over any material issue. Summary judgment was therefore properly granted in favor of Defendants on Plaintiff-Appellant's First Amendment claim for injunctive and declaratory relief.
 
 
 24
 For the foregoing reasons the judgment of the district court is AFFIRMED.
 
 
 
 *
 This panel unanimously finds this case suitable for decision without oral argument. Fed.R.Evid. 34; Ninth Cir.R. 34-4
 
 
 **
 Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation
 
 
 ***
 This disposition is not intended for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The regulation in question, Bureau of Prisons Program Statement 5265.08, permits a federal prison warden to
 reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might faciliate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains....:
 ....
 [s]exually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order [sic].
 
 
 [2]
 In this context, a regulation which on its face impinges on protected rights of expression by, for example, prohibiting the possession of books on certain topics, is nonetheless "neutral" where distinctions between types of printed or graphic material are distinguished solely on the basis of their implications for prison security. Thornburgh v. Abbott, 490 U.S. at 415-16